UNDERWOOD TYPEWRITER COMPANY, Respondent, v. CENTURY REALTY COMPANY, Appellant.

St. Louis , Court of Appeals, April 2, 1912.

1. **APPELLATE PRACTICE: Decision on Former Appeal: Law of Case.** A question determined on a former appeal of the case is concluded on a subsequent appeal.

2. **PRINCIPAL AND AGENT: Landlord and Tenant: Implied Authority of Agent.** Although an agent with authority only to collect rents has no implied authority to execute leases or indorsements thereon, a general agent of the landlord, who, besides collecting the rents, receives complaints, makes repairs, and has general supervision of the building, has such implied authority, in the absence of notice of limitations on his authority to one dealing with him.

3. ——— : ——— : ———: **Facts Stated.** The owner of the Century Building appointed a trust company as its attorney in fact, and this trust company appointed an agent to have general charge of the building. The agent for several years had an office in the building, on which was the sign "Century Building Company Office or Agents of Century Building," collected the rents, received complaints, made repairs, and had general charge of the building. *Held*, that whether the trust company, under the power of attorney, had power to appoint the agent and confer authority on it to indorse on a lease a

consent to a subletting, the owner of the building had conferred apparent authority on the agent to give such consent; and hence, for a failure to carry out an agreement by the agent that such consent would be given when an acceptable tenant was found, the owner was liable.

4. ———: **Implied Authority of Agent.** As to third persons dealing with an agent, the principal is bound to the extent of the apparent authority conferred on the agent, and not by the actual or express authority only, where that differs from the apparent authority.

5. **CONTRACTS: Action for Breach: Measure of Damages.** Where, in an action for breach of a contract, it appears that the contract was breached by defendant for no other reason than that he was unwilling to comply with it, the measure of damages is the value of the bargain to plaintiff.

6. **LANDLORD AND TENANT: Breach of Agreement for Subletting: Measure of Damages.** Where an agreement by a landlord to consent to a subletting, if an acceptable subtenant was found, was broken by him for no other reason than that he was unwilling to comply with the agreement, the tenant was entitled to recover the loss of his bargain, and the measure of damages was the difference between the rent which he had agreed to pay and the amount which he would have received from the subtenant.

7. **INTEREST: Contracts: Action for Breach: Damages.** In an action for breach of contract, where loss of profits is sought to be recovered, plaintiff cannot recover interest on such profits.

8. **LANDLORD AND TENANT: Breach of Agreement for Subletting: Damages: Interest: Excessive Recovery.** In an action by a tenant against his landlord for breach of an agreement to permit him to sublet, *held*, that an award of damages in favor of plaintiff was excessive by $450.03, that being the amount of interest erroneously allowed.

9. **APPELLATE PRACTICE: Affirmance on Condition: Remittitur.** In an action by a tenant against his landlord for breach of an agreement to permit him to sublet, judgment *ordered* affirmed on condition that plaintiff remit the amount the court found to be excessive, otherwise to be reversed and the cause remanded.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED (*conditionally*).

*Dawson & Garvin* for appellant.

(1) Although called by amendment of the second amended petition a subletting the proposed transaction of the Underwood Typewriter Company with the Booklovers Library was according to the legal effect of the undisputed testimony an assignment. Plaintiff proposed to transfer its entire interest in the unexpired lease which would constitute in law an assignment. Railroad v. Railroad, 135 Mo. 190. And might have released plaintiff from further liability and the substitution of a new tenant. Tyler v. Guster, 74 Mo. App. 543; Clement v. Bloomfield, 19 Mo. 121. And nullify the covenant against further assignments. Taylor, Landlord & Tenant, sec. 410; Dougherty v. Mathews, 35 Mo. 520. (2) Authority to consent in writing to an assignment of a written five year lease requiring the written consent of the lessor must be expressly from the lessor and in writing. R. S. Mo. 1899, secs. 3414, 3415. (3) An attorney in fact of the lessor cannot expressly or impliedly vest its own agent with authority to bind the lessor with respect to a covenant in such a written lease against an assignment or underletting without the written consent of the lessor. McClure v. Insurance Co., 4 Mo. App. 148; Brewer v. Dyer, 7 Cush. (Mass.) 338; Bottling v. Martin, 1 Campbells, 318. (4) The right to refuse an assignee or subtenant as "not satisfactory and acceptable" was reserved unconditionally and is personal to defendant, who alone had the right to determine who was an acceptable tenant. Typewriter Co. v. Realty Co., 220 Mo. 522; Campbell P. & P. Co. v. Thorp, 36 Fed. 417; Selsbury v. Chico, 24 Fed. 895; Blaine v. Knapp & Co., 140 Mo. 241; Vogel v. Pekoc, 157 Ill. 339; Davie v. Mining Co., 93 Mich. 491. The plaintiff never offered a tenant satisfactory and acceptable to the defendant. (5) In any case the court's instruction to the jury on the measure of damages was erroneous.

Taylor v. McGuire, 12 Mo. 313; Steffen v. Railroad, 156 Mo. 322; Rogan v. Railroad, 51 Mo. App. 665.

*John B. Denvir, Jr.,* and *Carter, Collins, Jones* and *Barker* for respondent.

(1) The question of consideration to support this contract has been passed on by the Supreme Court and is no longer in this case. Typewriter Co. v. Realty Co., 220 Mo. 522, 118 Mo. App. 197. (2) The Booklovers Library was satisfactory and acceptable to and was accepted by the Real Estate Company and the refusal to give the written consent was expressly based on other grounds. (3) The court's instruction on the measure of damages was not erroneous. Kirkpatrick v. Downing, 58 Mo. 32; Hartzell v. Crumb, 90 Mo. 629; Krepp v. Railroad, 99 Mo. App. 94; Nelson Hirsch & Sons Co., 102 Mo. App. 498; Engel v. Fitch, L. R. 3 Q. B. D. 314. (4) This case having been submitted to the jury under proper instructions, the jury having found the issues in favor of plaintiff and the motion for a new trial having been overruled by the trial court, the verdict is conclusive in this court. Bank v. Peck, 140 S. W. 762, par. 3.

NORTONI, J.—This is a suit for damages accrued on account of a breach of contract. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff was the tenant of defendant, and as such occupied room No. 309 Century Building, North Ninth street, St. Louis, under a written lease for a term of five years, commencing February 1, 1901, and expiring February 1, 1906. Because of the increment of its business, plaintiff desired to vacate the premises and obtain larger quarters, but by the terms of the lease it was forbidden to underlet the same to another. However, plaintiff's manager called upon defendant's agent, McCormick-Kilgen-Rule Real Estate Company,

and after having stated the facts in connection with
its desire to vacate the premises, solicited permission
to underlet the same. Plaintiff requested defendant
to indorse on its lease in writing the privilege of sub-
letting the premises. In answer to this request, de-
fendant's agent wrote plaintiff as follows:

"July 7th, 1903.
"Underwood Typewriter Company:

Gentlemen: Replying to yours of July 6th.
we cannot give you a general permission to sublet the
store now occupied by you, but when you have a pros-
pective tenant and submit the name to us, if the tenant
is satisfactory and acceptable, we will then give you
the written consent.

"(Signed)                Yours very truly,
"McCormick-Kilgen-Rule Real Estate Co.,
By A. O. Rule, President."

From this letter it appears that defendant agreed
to give written consent for a sublease, upon plaintiff's
procuring a tenant for the premises who should be
satisfactory and acceptable to it. Relying on this
promise, plaintiff expended time, labor and money in
procuring a satisfactory and acceptable tenant for de-
fendant. It finally succeeded in interesting the Book-
lovers Library in the premises. The Booklovers Li-
brary agreed to occupy the room, No. 309, North Ninth
street, as the under-tenant of plaintiff during the re-
mainder of its term at a considerable increase in rent
over that which plaintiff was then paying. Besides
the increase in monthly rental which plaintiff was to
receive from the Booklovers Library over the amount
it was required to pay to defendant, under its lease,
the Booklovers Library agreed to pay plaintiff a bo-
nus of $500 as additional compensation for the privi-
lege.

For plaintiff the evidence tends to prove that it
submitted the name of the Booklovers Library to de-

fendant's agent as a prospective tenant to whom it desired to underlease the premises, and defendant's agent agreed that the Booklovers Library was both satisfactory and acceptable as a tenant. Indeed, it appears that the president of the McCormick-Kilgen-Rule Real Estate Company, agent for defendant, had his pen in hand and was in the very act of indorsing consent on the lease for the underletting when he learned that under the arrangement plaintiff was to receive a bonus of $500 from the Booklovers Library for the privilege. Learning this through a remark made at the time by the manager of the Booklovers Library, the president of the real estate company laid down his pen and declined to indorse the consent for subletting unless the $500 bonus was paid to him. Upon plaintiff's declining to permit the payment of such bonus to defendant's agent, the agent utterly refused to indorse defendant's consent upon the lease for the underletting of the premises, and this, too, though the Booklovers Library was in all respects satisfactory and acceptable as a tenant. Through such refusal, plaintiff's efforts to sublet the premises were defeated and in consequence thereof it suffered the loss of the $500 bonus and the monthly increase in rent as well for which it had arranged with the Booklovers Library.

On demurrer to the petition in this same case, both this court and the Supreme Court have heretofore declared that plaintiff was entitled to recover from defendant for its breach of contract touching the matter of indorsing consent on the lease for a subletting of the premises upon showing the facts above stated to the satisfaction of the jury. [See Underwood Typewriter Co. v. Century, 118 Mo. App. 197, 94 S. W. 787, 220 Mo. 522, 119 S. W. 400.] The question thus determined is concluded for the purpose of the case, and the present appeal presents but three propositions which merit consideration in the opin-

ion.   The first of these relates to the sufficiency of
the proof with respect to the agency of the McCor-
mick-Kilgen-Rule Real Estate Company to bind de-
fendant, and the second pertains to the measure of
damages, if any.   The third touches upon an excessive
recovery.

It is argued the court should have directed a
verdict for defendant because there is a dearth of
evidence that the McCormick-Kilgen-Rule Real Es-
tate Company was the agent of defendant for the
purpose of granting permission for a subletting of
the premises.   It appears the Century Building, sit-
uated at Ninth, Olive and Locust streets in St. Louis,
is owned by the Century Realty Company, a corpora-
tion, and there is no evidence in the record that such
realty company ever at any time appointed the McCor-
mick-Kilgen-Rule Real Estate Company its agent.
It appears that through a contract with the Century
Realty Company the Mississippi Valley Trust Com-
pany had purchased the bonds of that company and
as parcel of this transaction was duly appointed at-
torney in fact for the Century Realty Company. The
power of attorney is not in evidence, but the proof
reveals that the Mississippi Valley Trust Company
was given complete control in all respects of the Cen-
tury Building through such instrument.   The Mis-
sissippi Valley Trust Company appointed the McCor-
mick-Kilgen-Rule Real Estate Company its agent to
negotiate leases, collect rents, make repairs and have
general charge of the Century Building and the differ-
ent tenements therein.   The McCormick-Kilgen-Rule
Real Estate Company rented an office in the Century
Building from the Century Realty Company and this
office it occupied as its headquarters.   On the door of
the McCormick-Kilgen-Rule Real Estate Company's
office in the Century Building there was a sign as fol-
lows, ''Century Building Company office or agents of

Century Building," and it appears this sign had been maintained there for several years.

The evidence is conclusive to the effect that the McCormick-Kilgen-Rule Real Estate Company collected the rents from the tenants in the Century Building, including plaintiff, made repairs, and it is to be inferred that it had general charge of the building. In this state of the proof, we regard it wholy immaterial as to whether or not the Mississippi Valley Trust Company as attorney in fact possessed the power to appoint the McCormick-Kilgen-Rule Real Estate Company agent for the premises and confer authority upon it to indorse the lease as above mentioned. The instrument by which the Mississippi Valley Trust Company was appointed attorney in fact is not in evidence and we are unable to determine precisely what authority was conferred with respect to the delegation of power to another. But be this as it may, there can be no doubt that defendant Century Realty Company should be required to answer here on the score of apparent authority for the act of the McCormick-Kilgen-Rule Real Estate Company as its agent. It may be, and no doubt is, true that an agent with authority only to collect rents should not be regarded as possessing implied authority as well to execute leases or indorsements thereon, but obviously such is not the rule with respect to a general agent for the landlord, who, besides collecting the rents, receives complaints, makes repairs and has general supervision of the building. No one can doubt the powers which the law implies touching the authority of such an agent, unless notice of limitations thereon are otherwise afforded to one who deals with him. Concerning this matter, Mr. Underhill, in his recent work on Landlord and Tenant, Vol. 1, p. 95, says: "It has been held that an agent who has the general and exclusive charge of the business of his principal may have the power to modify the terms of existing leases. Thus,

in New York it has been held that a general agent has power to modify the express terms of a lease which was executed by his principal by agreeing that a tenant of premises which have been destroyed by fire may occupy the premises rent free until repairs have been made or until the premises have been restored to a tenantable condition. The modification is valid and binding on the principal though not made with his knowledge, as the remaining in possession of the tenant is the consideration of the agreement by the agent for under the New York statute the tenant has the right to abandon the premises and the rent ceases.'' [See also Ireland v. Hyde, 69 N. Y. Supp. 889.]

On the proof made, the McCormick-Kilgen-Rule Real Estate Company should be regarded the general agent for defendant. The jury were warranted in so finding the fact to be. As before said, it was shown this real estate company collected the rents of the various tenants, received complaints, made repairs and looked after the building, and this, too, with respect to the premises occupied by plaintiff and involved here. Furthermore, this company occupied a room in the Century Building owned by defendant and on the door of its office constantly maintained a sign by which it proclaimed to one and all that the office was ''The Century Building Company Office'' and that those in charge thereof were the agents of the Century Building. Here was undoubtedly a holding out of the McCormick-Kilgen-Rule Real Estate Company as agents for defendant with its full knowledge and consent, and nothing suggests any limitations whatever with respect to the power of such agent. As to third parties dealing with the agent, the principal is bound to the extent of the apparent authority conferred upon the agent, and not by the actual or express authority where that differs from appearances. [See 1 Am. & Eng. Ency. Law (2 Ed.), 986; Clark & Skyles on Agency, secs. 208, 209.] The authority last

cited, section 208, says: "The apparent·scope of an agent's authority is that authority which a reasonably prudent man, induced by the principal's acts or conduct and in the exercise of reasonable diligence and sound discretion, under similar circumstances with the party dealing with the agent, and with like knowledge, would naturally suppose the agent to have." Obviously, there is an abundance in the evidence above pointed out to warrant the jury in finding, as it did, under proper instruction, that McCormick-Kilgen-Rule Real Estate Company acted within the apparent authority which defendant suffered to be held out to the world in the office in its building when it contracted for defendant to indorse permission on the lease for the subletting.

For plaintiff the court gave the following instruction on the measure of damages: "If you find for the plaintiff, you will assess its damages in such sum as you may find and believe from the evidence to be the mentioned in the evidence and the amount that plaintiff was to pay defendant under the terms of the lease mentioned in the evidence and the amount that plaintiff would have received from the subtenant procured by it as mentioned in the evidence under the terms of the subletting, which in no event shall exceed the sum of $4500 the amount sued for." It is argued this instruction incorporates an erroneous view as to the measure of damages in a case such as this one, but we are not so persuaded. Where it appears, as here, that the contract was breached by defendant for no other reason than because it was unwilling to comply with the agreement, the measure of the damages is the value of the bargain to the injured party. The case of Engel v. Fitch (see 3 L. R. Q. B. 314) and subsequently affirmed on appeal in the Court of Exchequer (see 4 L. R. Q. B. 659) is precisely in point on this question and is abundant authority for the instruction above given. But beyond this the authority

of that case in both reports is quoted and approved by our own Supreme Court in Kirkpatrick v. Downing, 58 Mo. 32.

The jury awarded a recovery of $1500. The evidence tends to prove that the loss entailed upon plaintiff by defendant's breach of the contract amounts to $1049.97. Such is the amount which plaintiff would have realized as profits on the transaction, had defendant abided the contract and not breached it. It is conceded that this amount, $1049.97, is all that plaintiff is entitled to recover unless interest may be allowed thereon from the date of the breach. Plaintiff argues that the additional $450.03 which is incorporated in the verdict over and above the amount of $1049.97 should be sustained as interest thereon. There can be no doubt that under our statute (Sec. 7179, R. S. 1909) interest may be recovered for damages which accrue on the breach of a written contract in many cases. For instance, where a written contract was breached and the loss entailed was the difference between the contract price of goods sold and the market value of the same goods at the time defendant refused to receive them, this court declared interest was recoverable thereon. [See Nelson v. Hirsch & Sons, etc. Co., 102 Mo. App. 498, 517, 77 S. W. 590.] But be this as it may, our Supreme Court has pointedly declared that interest is not recoverable even for the breach of a written contract when the only damages sued for are the loss of profits shown to have been available to plaintiff had the contract not been breached. [See Wiggins Ferry Co. v. Chicago & A. R. Co., 128 Mo. 224, 255, 27 S. W. 568, 30 S. W. 430.] The entire damage sought to be recovered here relate to the loss of profits entailed upon plaintiff because of defendant's breach of the contract, and such profits are the measure of the damages recoverable. In view of the broad language employed by the Supreme Court touching this question in the case above cited, we incline to the

view that no recovery of interest should be allowed when the measure of damages is the loss of profits. Because the verdict is excessive in the amount of $450.03, the judgment should be reversed, unless plaintiff sees fit to remit that amount, in which event it may be affirmed. Plaintiff having appeared in court and voluntarily remitted the amount of $450.03 recovered as for interest, the judgment should be affirmed as of the date thereof for $1049.97 together with interest thereon from its date at six per cent until paid. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.