W. B. MONTBRIAND ET AL., APPELLANTS, v. ISABELLA SCRUGGS, ET AL. RESPONDENTS.—46 S. W. (2d) 211.

Kansas City Court of Appeals.　February 1, 1932.

*E. C. Hamilton* for appellants.

*Raymond G. Barnett* and *J. P. Flournoy* for respondents.

ARNOLD, J.—This is a suit by plaintiffs to cancel a note and deed of trust securing same, instituted in the circuit court of Jackson County, Missouri, at Independence, by filing a bill in equity.

No question is raised as to the sufficiency of the bill, or defendants' answer and cross-bill. The bill alleges the necessary formal matters and states that on August 1, 1922, plaintiffs purchased Lot 24, Resurvey of Lynhurst, a subdivision of Jackson County, Missouri, taking a warranty deed, subject to a first deed of trust for $600. The note and deed of trust are dated November 7, 1918; the note, signed by D. M. McIntyre and George A. Gould, was payable to W. S. Flournoy, due in three years. The deed of trust securing said note was executed by D. M. McIntyre and wife, and named A. M. Ott as trustee; that said note had been fully paid; that the purchase of said property and payment of the note were accomplished through the firm of George A. Gould & Company, in conjunction with John P. Flournoy as the duly authorized agent of the owner and holder of said note; that said note was indorsed by the payee to defendant Isabella Scruggs, and later, was indorsed by her to John P. Flournoy for collection; that no extension of time is indicated on the note; that plaintiffs continued to make payments of principal and interest to George A. Gould & Co., believing, in good faith, the owner and holder of said note knew of the acts of George Gould & Co., in receiving such payments and in granting extension of time; that the owner and holder ratified the same; that John P. Flournoy was, at all times complained of, the partner of William S. Flournoy, prior to the latter's death, which occurred in June, 1929, under the firm name of Flournoy & Flournoy, attorneys, with offices in Kansas City, Missouri; that John P. Flournoy has conducted the business of the firm since that date and was fully conversant with all matters pertaining to the note and deed of trust in issue, and was acting as joint agent with said Gould & Company for the owner and holder of said note, and for himself the owner thereof; that Annie F. Flournoy is made a party defendant because she is executor of the estate of William S. Flournoy, the original payee named in said note; that, while the note was more than eight years past due, at time of final payment, no demand was ever made for payment; that plaintiffs believe the holder or holders of said note received payment in full, or were looking to their agents aforesaid to make settlement out of funds received by them from plaintiffs; that the holder or holders of said note, by their acts and long continued course of dealing, have ratified the acts of said agents, and are thereby estopped from asserting any claim against defendants, on account of said note; that the final payment

438

was made October 3, 1927; that plaintiffs requested of George A. Gould & Co., the surrender of said note and deed of trust and that said Gould & Co. informed plaintiffs the note and deed of trust would be turned over to them as soon as they could be gotten from the holder; that at intervals such request was renewed, but without success; that about the latter part of April, 1930, defendant John P. Flournoy, to whom the note had been specially indorsed, represented himself to plaintiffs to be the holder of said note, and demanded payment of the same; that plaintiffs have been informed that one of the officers and representatives of George A. Gould & Co. has failed to account for the money paid to said company as agent for the holder of said note, and that said officer has absconded; that said uncancelled note and deed of trust constitute a cloud upon plaintiffs' title, although the obligation has been fully paid; and that they are without plain, adequate and complete remedy at law. The prayer asks cancellation of the note and deed of trust, and for such other and further relief as to the court may seem just and proper.

The answer admits plaintiffs became the owners of the real estate involved, and that there was a deed of trust for $600, unsatisfied against the same, and generally denies all other allegations in plaintiffs' bill; alleges the assignment of the note to Isabella Scruggs was for value, she having loaned the money for which the note was executed, and that she is now and has been since the date of the transfer to her, the owner and holder thereof; that just prior to the filing of this suit, it was indorsed by her to defendant John P. Flournoy for collection; that said Flournoy was not and never had been the owner of said note nor of any interest therein; and that Annie F. Flournoy, executrix of the estate of William S. Flournoy, does not and never did own said note nor any interest therein; that the semi-annual interest has been paid to November 7, 1929, and that no part of the principal has been paid.

On September 11, 1930, defendant Scrubbs filed a cross-bill setting out the necessary facts relative to the parties, the execution of the note and deed of trust; the transfer of the same and the transfers of the property as detailed in plaintiffs' bill; asking the court to declare the principal and interest of said note to be in default; that the lien be enforced and that plaintiff's equity of redemption, and all persons claiming under them in said real estate be foreclosed and the property sold. Evidence was heard and the court held for defendants on plaintiffs' bill and on the cross-bill, decreeing as follows:

"Wherefore, it is decreed and ordered by the court that defendant, Isabella Scruggs have judgment against plaintiffs, W. B. Montbriand and Susan M. Montbriand, that said note in the sum of $654.93 with interest thereon at eight per cent per annum from

date of this judgment together with costs of this suit is a first mortgage lien upon said real estate above described and that said deed of trust and all equity of redemption of plaintiffs in said real estate and all right and title and interest thereof belonging to them and each of them be foreclosed, and that the real estate above described be sold to satisfy said judgment and costs, and it is ordered that special execution issue for the sale of said real estate and that upon sale thereof the proceeds be applied first to payment of the costs incurred therein, and then to the satisfaction of said judgment and interest, and that the remainder, if any thereafter, be paid to plaintiffs, W. B. Montbriand and Susan M. Montbriand.''

Motions for a new trial and in arrest were overruled and plaintiffs.have appealed.

We have carefully read the record and find no conflict as to material facts. Therefore it will be unnecessary to refer to the evidence in detail. The following facts are established by undisputed evidence of record:

In 1922, plaintiffs, husband and wife, brought the house and lot referred to in the proceedings, subject to a deed of trust securing the $600 note in issue. The note, dated November 7, 1918, was payable to the order of William S. Flournoy, at the Chrisman-Sawyer Bank in Independence, Missouri, due three years after date. On the note ledger of William S. Flournoy ·(whose death occurred prior to the filing of this suit), and in his own handwriting, was noted an extension of payment to November 7, 1924, and again to November 7, 1927. The note was signed by George A. Gould and D. M. McIntyre. Said McIntyre and his wife executed the deed of trust securing the note, but Gould owned no interest in the real estate and did not sign the deed of trust. Immediately after its execution, the payee, William S. Flournoy, assigned, transferred and delivered said note to defendant Scruggs, she paying $600 for it. Mrs. Scruggs, who lived in Lees Summit, on receipt of the note, placed it for safe keeping in the Bank of Lees Summit, with the cashier thereof, Earl Cooper, where it remained until June, 1930, when it was withdrawn by Mrs. Scruggs, indorsed by her and mailed to defendant John P. Flournoy for collection.

The testimony shows George A. Gould & Company had been in the real estate business in Independence for many years. The firm was composed of George A. Gould and his son Jay M. Gould; that during that time they obtained various loans for their clients through William S. Flournoy, amounting to something over $50,000, on Independence real estate, on most of which the Goulds collected the interest which they remitted to Flournoy. On behalf of defendants, the testimony shows that in these instances, Flournoy inspected the property, prepared the papers in his own office and passed on the

security when delivered to him. The testimony in plaintiffs' behalf shows the property (Lot 24, Lynhurst Resurvey, Jackson county, Missouri) was purchased by them with an existing incumbrance of $600; that, as part of the purchase price, they executed a second note and deed of trust for $500, on the same property, payable at the office of Gould & Co., in monthly installments; that shortly thereafter, they purchased the adjoining vacant lot No. 25, the purchase being made through Gould & Company. Later, as testified to by plaintiff Susan M. Montbriand, they placed an additional $300 deed of trust on Lot 24, which transaction was also arranged in Gould's office; that they then began payment of all these obligations at Gould's office, either to George A. Gould or his son, Jay M. Gould, all in small monthly payments continuing over a period of about five years.

There were introduced in evidence receipts showing plaintiffs had paid enough in all to pay all these obligations except the $300 deed of trust. There was received in evidence a final receipt which plaintiffs claim completed the final payment on the $600 note in issue. The receipt is dated October 3, 1927, and is as follows:

"Received of W. B. Montbriand, seventeen dollars in full to date.
"(Signed) GEORGE A. GOULD & Co.,
"By J. M. GOULD."

All the receipts in evidence show they are signed "George A. Gould & Co." by either George A. or Jay M. Gould. The testimony is to the effect the semi-annual interest was remitted by Gould & Co. to William S. Flournoy up to the time of said Flourney's death in June, 1929, and by Flournoy remitted to Mrs. Scruggs who took the remittances to the bank in Lees Summit where they were credited on the note by the cashier, Cooper. The note was never in Gould's possession, but remained in the possession of defendant Scruggs, as above stated.

The testimony further shows that while George A. Gould & Co. remitted the interest payments to the Flournoys, the payments on the principal were not sent to them, but kept by the Gould Company, the result being that none of the payments on the principal reached the hands of Mrs. Scruggs, the owner and holder of the note. The testimony is that Flournoy remitted to Mrs. Scruggs the interest payments, less his commission of five per cent.

It is plaintiff's contention that George A. Gould & Co. was the agent of an undisclosed principal, W. S. Flournoy, and that Flournoy, in turn, was the agent of Mrs. Scruggs, another undisclosed principal; and plaintiffs, having dealt with Gould & Co., supposedly the sole principal, any defense available as against Gould & Co. would be likewise a defense against the undisclosed principal. This argument is based upon the testimony of plaintiffs that they did not know either Flournoy or Mrs. Scruggs; and the testimony of Mrs.

Scruggs that she never had any transactions with Gould & Co. and never knew them; and that of George A. Gould that he did not know Mrs. Scruggs—didn't think he ever saw her, and if so, he didn't know her. It is defendants' contention that Gould & Co. were not the agents of either Flournoy or Mrs. Scruggs. And so, this appeal hinges on the fact as to whether Gould & Co. were the agents of plaintiffs or defendants. If, in fact, they were plaintiffs' agents, plaintiffs may not recover. The vital question is, Did the Goulds have authority to collect the note? It must be concluded there is no evidence showing such authority in them. George A. Gould, testifying for plaintiffs, stated:

"Q. Well, now, Mr. Gould, during that period of time, these payments were being handled through your office, is that true? A. Yes, sir.

"Q. You were also at that time handling the matter for and on behalf of Mr. Montbriand and his wife, who were patrons of Your office? A. Yes, sir."

This testimony corroborates that of plaintiffs to the effect that Gould & Co. transacted all their business in connection with the handling of this property. In the light of all the evidence, we cannot come to any other conclusion than that Gould & Co. were the agents of plaintiffs and not of any or all of the defendants.

The testimony shows the payments were made to Gould & Co. without a demand for an exhibition of the note. It is the law that one who pays another not in possession of the paper and fails to see to it that the proper credit is placed thereon, is negligent; also one who fails, on final payment, to secure the cancelled note, pays at his peril, and does so at his own risk, when the party to whom the payment is made was not authorized by the actual owner of the note to receive the payment. [Heffernan v. Boteler, 87 Mo. App. 316; McDonald v. Smith, 202 Mo. App. 78, 206 S. W. 591; Brants v. Runnels, 26 S., W. (2d) 1004; Maguire v. Donovan, 108 Mo. App. 511, 516.] Mrs. Montbriand testified she made no demand to see the note until she made the final payment. Having made the payments in the manner shown by the evidence, plaintiffs must assume the burden of showing Gould's authority to collect the note. Such authority must be shown to be direct, or by estoppel on the part of the holder of the note to deny agency, express or implied; the latter may be shown by a course of dealing. [Brants v. Runnels, supra.] The elements of agency by estoppel are: "There must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to

whom it was made must have relied on or acted upon it to his prejudice. To constitute an 'estoppel *in pais'* there must concur an admission, statement or act inconsistent with the claim afterward asserted, action by the other party thereon and injury to such other party.'' [21 C. J. 1119.] When the party to whom payment is made does not know of the holder's ownership, the holder is not estopped to deny agency of a third party because the payor could not have been misled by the holder. [Austin Western Rd. Machinery Co. v. Bank, 255 S. W. 585, 586.] The mere fact that a broker negotiates a loan between borrower and lender for the lender does not show the broker has authority to collect either principal or interest. It is also the law that even if the broker is authorized to collect the interest, it does not follow he has authority to collect the principal. [Brants v. Runnels, and Heffernan v. Boteler, above cited.] Authority to collect a note is one of trust and confidence, and cannot be delegated. The general rule in this respect is stated in 2 C. J. 633; Rector v. Mulford Co., 185 S. W. 255. This ruling is against plaintiffs' contention that Flournoy was the agent of Mrs. Scruggs and that he delegated that agency to Gould & Company.

Plaintiffs argue that because there was an undisclosed principal, they are entitled to recover, but we are unable to accept their argument as conclusive. In the first place, the evidence shows Gould and Company were not the agents of William S. Flournoy to collect the note. It is true the testimony shows Gould & Company collected the interest and remitted the amounts to Flournoy; but this does not carry with it the authority to collect the principal. Moreover the testimony shows that Flournoy was not Mrs. Scruggs' agent to collect the principal. Mrs. Scruggs kept the note in her possession until it became in arrears, when she indorsed it to John P. Flournoy, for collection. This made him her agent with limited authority. Until that time, neither Flournoy nor Gould & Co. were Mrs. Scrugg's agent to collect the principal of the note. We rule with the chancellor on this phase of the case.

Under Point 2, plaintiffs urge as a settled principal of law that where the owner of a note who is an undisclosed principal ratifies the acts of his agent, and for a period of years after the date of maturity and after the note has been paid in full to the agent, remains quiescent such undisclosed principal will not be heard to say, after default of such agent, that the latter was without authority to collect the note. There is no evidence in the record to warrant such deduction. In this respect plaintiffs lean heavily on the opinion of this court in Thornhill v. Masucci, 202 Mo. App. 357, 216 S. W. 819. But we note the facts in that case are readily distinguishable from the facts in evidence herein. There is no evidence of record that Scruggs or Flournoy knew Gould & Co. were

collecting the principal of the note. It is said in the case of Sewell v. Schooler, 4 S. W. (2d) 491, 493, in discussing and applying the rule laid down in the Thornhill case:

"Plaintiff can only be considered remiss, if at all, because he let his note run along without renewal and without giving the matter attention. But he was regularly receiving his interest, and the fact he did let his note run on indefinitely and without attention should not alone estop him from denying that McGee had authority to collect the principal." [Citing Cummings v. Hurd, 49 Mo. App. 139.]

So that had there been no extension of the time of payment in the note before us, under the ruling in the Sewell case, the question of estoppel could not arise. The testimony in the case at bar supports the conclusion that extension of time of payment of the note was from 1921 to 1924, and again from 1924 to 1927, and the payments made to Gould & Co. were all made before final maturity. Therefore plaintiffs paid a note yet matured and to one not in possession thereof. We rule against plaintiffs on this point.

Plaintiffs ask "How could appellants know that W. S. Flournoy claimed an interest in the note, and how could they have known that his undisclosed principal, Isabella Scruggs, was the owner of said note?" The record, in fact, discloses that W. S. Flournoy did not claim any interest in the note. It is the law that if money is due on negotiable security, it is the duty of the debtor to see to it that the person to whom he pays the money is in possession of the security. That is the best evidence of authority to collect; the payor is negligent if he relies on anything else. [Bartel v. Brown, 104 Wis. 493.] He must take notice that a negotiable note is likely to pass into the hands of a purchaser. [McDonald v. Smith, supra.]

It is proper to say it would have been easy for plaintiffs to have demanded the note of Gould before payment, as they did afterwards, and they would have learned the Gould company did not have it. Possession of the paper is proof aliunde of express authority to collect. The record discloses this is a case of hardship. Plaintiffs have paid the full amount of the deed of trust on their home, but the holder of the note has never received anything but the interest, the principal being wholly unpaid. The testimony fully supports the decree of the learned chancellor, and we shall not disturb it, although it works a great hardship on plaintiffs.

The judgment is affirmed. All concur.