Andrew **HOCHREIN** and Ernestine Hochrein,
Plaintiffs-Respondents,

v.

Marian **BALTHASAR** and Dorothy Dennison,
Defendants-Appellants.

No. 31042.

St. Louis Court of Appeals.

Missouri.

Oct. 16, 1962.

Richard Wolff, Kappel & Neill, St. Louis, for defendants-appellants.

Albert J. Haller, Clayton, for plaintiffs-respondents.

DOERNER, Commissioner.

This is an action to enjoin the threatened foreclosure of a deed of trust and to compel the crediting of certain payments on a principal note thereby secured. The chancellor granted the relief prayed and defendants appealed.

The cause was submitted on an agreed statement of facts, together with the testimony of the parties concerned. In May, 1958, plaintiffs, who are husband and wife, purchased property at 3630 Iowa Avenue in the City of St. Louis from the Hasse Real Estate Company. In order to finance the purchase they borrowed the sum of $9,500 from F. A. Sander, the president of F. A. Sander Real Estate and Investment Co., Inc. The loan was evidenced by twenty negotiable promissory notes executed by plaintiffs, all dated May 17, 1959, payable to Mildred H. Sander, the wife of F. A. Sander. Ten of said notes were principal notes, of which those marked A, B, C, D, E, F, G, H and I were for $400 each, the first being due and payable six months after date and the succeeding eight due, in order, at six months intervals thereafter. The tenth principal note, marked J, was for $5,900 and was due sixty months after date. The remaining ten notes were interest notes for the interest to be earned on the principal at the rate of 6% per annum and were numbered 1 to 10 inclusive.

Note No. 1 was for $285, due six months after date, and each succeeding note was for the sum of $12 less than the one preceding it, and they were likewise due, in order, at six months intervals. As security for the notes plaintiffs at the same time executed a first deed of trust upon their property, in which Sander was named trustee and Mrs. Sander the third party beneficiary. All of the notes were made payable at the office of the Sander Real Estate and Investment Co., Inc., and the deed of trust provided that the third party, for herself and her successors in interest, would deposit all notes, whether for principal or interest, with the Sander Company for collection as they matured, for which the Company was to receive a fee of ½% of 1% per annum of the principal sum remaining unpaid. It was also stipulated in the deed of trust that the privilege was granted to the makers of the notes to pay the sum of $100 or any multiple thereof on account of " * * * said principal note * * * " on any payment date, provided that thirty days advance notice in writing was given the trustee, and that such prepayment would reduce the interest and principal proportionately.

On November 8, 1958, shortly before the first principal and interest notes fell due, plaintiffs went to the office of the Sander Company and paid $1,285 to Sander in payment of Interest Note No. 1 and Principal Note A, in the amounts of $285 and $400, respectively, and as a prepayment of $600 on account of principal. At that time Sander gave plaintiffs a receipt for $600 as " * * * Pay Off on Deed of Trust 3630 Iowa" signed "F. A. Sander Real Estate and Investment Co., Inc., By F. A. Sander." About a week later they received through the mail the interest and principal notes, marked paid. On May 15, 1959, plaintiffs in the same fashion paid the sum of $955 in payment of Principal Note B for $400 and Interest Note No. 2 reduced proportionately to $255, and as a further prepayment of principal of $300. They received a similar receipt of the Sander Com-

pany, signed by Sander, for the $300 prepayment, and later received the cancelled principal and interest notes by mail.

About September 12, 1959, defendants purchased from the Sander Company all of the plaintiffs' remaining unpaid principal and interest notes, together with the deed of trust, for $7,937.50, which figure included Principal Note J, reduced from $5,900 to $5,000 by credits for the two prepayments theretofore made by plaintiffs; Principal Notes C through I for $400 each; and accrued interest of $137.05. The notes were all endorsed by Mildred H. Sander, without recourse. There was no dispute in the evidence that plaintiffs were not then advised of the purchase of their loan by defendants.

Thereafter, on November 7, 1959, plaintiffs gave Sander at the office of the Sander Company the sum of $1,234 in payment of Principal Note C for $400 and Interest Note No. 3 reduced to $234, and for a prepayment on account of principal of $600. They were given the customary receipt of the Sander Company, signed by Sander, for the latter sum, and later received through the mail the principal and interest notes, marked paid. The Sander Company sent defendant Balthasar a statement showing that it had collected the principal note for $400 and the interest of $234, accompanied with its check for $614.50, the amount it represented as having collected less its collection fee of $19.50. Mrs. Balthasar then sent Principal Note C and Interest Note No. 3 to the Sander Company.

Having made the prepayment of $600 on November 5, 1959, from plaintiffs' standpoint the principal remaining due was $6,800, on which the pro rata interest payable on May 17, 1960, was $204. Two days before that date plaintiffs paid the Sander Company the sum of $904, which to their view covered the interest due and Principal Note D for $400, as well as an additional prepayment on principal of $300. Pro rata interest on $7,400, the amount of principal due not taking into account the prepayment of $600, was $222. In an obvious

effort to conceal its machinations, the Sander Company then sent Mrs. Balthasar a statement showing collection of interest of that amount, together with the principal currently due of $400, and enclosed its check for $603.50, the total stated collection less its fee of $19.50. Mrs. Balthasar then sent the company Principal Note D and Interest Note No. 4. In this instance Sander was not in the office when plaintiffs made their payment, and an employee named Weidhaas gave them a receipt of the Sander Company for the entire $904. Subsequently they received through the mail another receipt of that company, signed by Sander, for the prepayment of $300, together with Principal Note D and Interest Note No. 4, marked paid.

Sander died on July 17, 1960, and on the following September 23 the Sander Company filed a voluntary petition in bankruptcy. On or about October 23, 1960, defendants through their attorneys notified plaintiffs by letter that defendants were the holders of the notes and deed of trust, and that all payments should be made to defendants. This was the first information plaintiffs had that their notes and deed of trust had been sold to defendants, and they subsequently learned that defendants had not received the disputed prepayments of $600 and $300. On November 15, 1960, plaintiffs tendered to defendants $400 in payment of Principal Note E due two days thereafter, and $183 as the pro rata interest due on the alleged principal of $6,100. Defendants accepted the $400, but refused the $183 and demanded interest of $210, which they asserted was due on the principal balance of $7,000. Plaintiffs refused to pay the interest demanded, defendants threatened foreclosure, and this action followed.

In reply to a question on cross-examination, plaintiff Andrew Hochrein testified that he had asked Sander whether the prepayments were being recorded on Principal Note J, and was told that he would just get receipts until after the five years when the note came due. He admitted that he never saw any notes when he made the various

payments to the Sander Company; conceded that he never saw any prepayments marked on the back of Principal Note J; and admitted that he never demanded that Sander produce the note so that he could see whether he was being given credit for the prepayments of principal. He further conceded that he did not know whether Sander had possession of the note when he made the prepayments, and stated that he thought Sander had it " * * * in the family," presumably meaning Mrs. Sander.

Mrs. Balthasar, one of the defendants, testified that following the death of her husband Sander telephoned her and asked whether she would be interested in buying a deed of trust. He gave her the location of plaintiffs' property, which she examined, and she agreed to buy the loan. She paid the entire purchase price of $7,937.05 but made her daughter, defendant Dennison, the co-owner, as a gift to the latter. Mrs. Balthasar stated that at the time of her purchase Sander delivered all of the unpaid principal and interest notes to her, together with the deed of trust, and that thereafter she never relinquished possession of any of the notes except the $400 principal and interest notes collected. She testified that she had authorized the Sander Company to collect the $400 principal notes and the interest notes, for which it was to receive a fee, but stated on both direct and cross-examination that she had never authorized it to accept or collect prepayments of principal for her, and that she had forbidden him to do so. She testified that when she purchased the loan Sander told her, regarding prepayments, that she might have to wait, because plaintiffs had a son overseas and that when he returned he was going to pay off the loan. Sander also told her to let the principal run as long as it could run, because she would get more interest. In answer to a question by the court, Mrs. Balthasar stated that after she had received the first payment she asked Sander whether he had collected any more, and he replied that she should be glad they hadn't paid any more as she would get more interest.

Mrs. Balthasar testified that she had never had any prior dealings with Sander. The other defendant, Miss Dennison, stated that she had nothing to do with plaintiffs' notes, and had never authorized Sander to collect prepayments of principal thereon. She stated that when her grandmother died Sander sold the home, and she took back a deed of trust from the purchasers; that the purchasers paid off the deed of trust, (who made the collection she did not state) and that Sander then sold her a deed of trust on property on Nineteenth Street. Sander had made one collection of principal and interest on that loan as it fell due, when the Sander Company went into bankruptcy.

The chancellor found " * * * that the F. A. Sander Real Estate & Investment Co., Inc., was the agent of the defendants for the collection of interest, principal, and principal prepayments, and that any restriction placed on the authority of their agent by defendants, was not binding on the plaintiffs who had no knowledge of any restrictions"; and that the disputed prepayments of $600 and $300 to the Sander Company " * * * as agent for defendants, * * *" were " * * * deemed to be payments to defendants as principals." The court enjoined defendants from foreclosing the deed of trust; ordered them to produce the principal note and to credit thereon the prepayments of $600 and $300; and directed that the interest was to be reduced proportionately on the remaining balance of principal.

Defendants do not dispute the trial court's finding that the Sander Company was defendants' agent for the collection of interest and the principal notes for $400. Nor could they very well do so, for Mrs. Balthasar's testimony clearly established that she had directly authorized Sander to make such collections as they fell due. But defendants assert that the court erred in holding that the Sander Company was their agent for the collection of prepayments of principal, and in support of their contention cite Kraemer v. Leber, Mo.App.,

267 S.W.2d 333 and Hamilton v. Hecht, Mo.App., 283 S.W.2d 894, both of which cases were decided by this court. In Kraemer v. Leber the plaintiffs borrowed the sum of $5,000 from one Pickles, a real estate dealer, and executed a principal note therefor, due in five years, together with ten interest notes for $125 each due at six-month intervals. The principal and interest notes, as well as the deed of trust, all recited that payments thereon were to be made at the office of Pickles; and the deed of trust further provided that plaintiffs had the right to make prepayments on account of principal of $100 or any multiple thereof on any interest maturity date, with a pro rata reduction of future interest. While the notes were owned by Pickles the plaintiffs paid four interest notes as they matured, and also made two prepayments totalling $636.26 on the principal note. When plaintiffs paid the interest notes as they matured Pickles would deliver to them the interest note then being paid. When prepayments were made upon the principal note Pickles gave them a receipt. No endorsement of payment on the principal note was made on the note itself at such times. Pickles subsequently sold the notes and deed of trust to Mrs. Leber, the defendant. At the time she purchased the loan the principal note bore an endorsement of the payment of $500 (although plaintiffs had paid $636.26), leaving a balance ostensibly due of $4,500, the amount paid by defendant. After the sale, as an interest date approached, defendant would take the maturing interest note to Pickles, and receive from him the amount of $112.50 ostensibly due thereon. This occurred on three occasions within a period of twenty months after defendant had purchased the notes. On these three interest maturity dates plaintiffs paid the interest notes currently due which Pickles adjusted downward (to $109.-10, $100 and $100) because of plaintiffs prepayments of principal; and on two of the three occasions plaintiffs also made prepayments of principal of $363.74 and $200 respectively. Pickles gave plaintiffs the currently due interest note as they paid it, and a receipt for the prepayment of principal, but did not remit the principal to defendant. Pickles died, and his peculations came to light when defendant notified plaintiffs to make all payments to her as the holder of their notes. Plaintiff had never been notified of the sale of the notes to defendant, and such notice was the first knowledge they had of defendants' ownership. There, as here, a controversy developed over the amount remaining due, defendants sought to foreclose, and plaintiffs brought suit to enjoin the foreclosure and to compel the crediting on their notes of the payments made to Pickles after defendants' purchase.

As to the three interest notes which Pickles had collected after defendants' purchase, this court held that the defendants' course of conduct in taking such notes to him, and receiving from him the interest currently due thereon, established "* * * an implied but none the less actual agency for the particular purpose of collecting the interest notes." But as to the prepayments of principal which Pickles had collected from plaintiffs and failed to remit to defendant, this court said (loc. cit. page 338 of 267 S.W.2d):

"The stipulated facts do not, however, create the relationship of principal and agent with respect to the collection of payments on the principal note. The $4,500 note was a negotiable instrument of such a character that plaintiffs were bound to have known that it could and probably would be negotiated and passed into the hands of a third party. As a consequence plaintiffs in making payments on this note should have ascertained that the person to whom payment was made either owned the note or had possession thereof for the purpose of collection. *When the maker pays money on a note to one who does not have the note in his possession he pays at his peril and at the risk of being required to show that the*

*payee was authorized to collect the payment as the agent of the owner.* Plaintiffs, in making payments on the principal note, in order to fully protect their own interests, were obliged to see to it that endorsements of the payments were made thereon and could not rely on a receipt from Pickles for credit on the amounts thus paid, without laying themselves open to the charge of negligence should he fail to remit faithfully to the owner of the note. These rules have been established by a long line of decisions, which are based on the equitable doctrine that where one of two innocent parties must suffer, the loss must fall upon the one whose negligence caused the loss. Cummings v. Hurd, 49 Mo.App. 139; Hefferman v. Boteler, 87 Mo.App. 316; McDonald v. Smith, 201 Mo.App. 78, 206 S.W. 591; Brants v. Runnels, Mo.App., 26 S.W.2d 1004; Montbriand v. Scruggs, 226 Mo. App. 436, 46 S.W.2d 211; Bost v. McFarland, 229 Mo.App. 776, 81 S.W.2d 350; Kirksey v. White, Mo.App., 167 S.W.2d 387." (Emphasis ours.)

Plaintiff in the Kraemer case also contended that the rulings that Sander was defendants' agent for the purpose of collecting interest, but not her agent for the collection of prepayments of principal, were inconsistent. In answer to that argument we said (loc. cit. page 338 of 267 S.W.2d):

"Appellants Kraemer contend that the latter finding is inconsistent with the finding that an agency existed with regard to the collection of the interest notes, but there is no such inconsistency. It is established law that from the fact that a broker is authorized to collect interest for the owner of the note it does not follow that he has authority to collect the principal. Bost v. McFarland, supra; Montbriand v. Scruggs, supra; Brants v. Runnels, supra; McDonald v. Smith, supra; Thornhill v. Masucci, 202 Mo.App. 357, 216 S.W. 819; Hefferman v. Boteler, supra."

The second case cited by defendants, Hamilton v. Hecht, Mo.App., 283 S.W.2d 894, likewise dealt with the question of the implied authority of an agent to make certain collections on notes. There the plaintiffs, the makers, borrowed the sum of $2,500 from one Meckel, president of the Meckel Realty Investment Company, and executed twelve notes therefor, secured by a deed of trust. Notes numbered 1, 3, 5, 7, 9 and 11 were interest notes due at six-month intervals, the first for $75 and each succeeding one being for $3 less than the preceding one. Notes 2, 4, 6, 8, 10 and 12 were principal notes, the first five of which were each for $100, due at six-month intervals, and the last was for $2,000. The notes were all payable at the office of the Meckel Company. Nine days after the loan was made the Meckel Company sold the loan to defendant Lony but plaintiffs were not notified and had no knowledge of the sale. At the end of the first six months, when Notes No. 1 and 2 were due, defendant Lony presented them to the Meckel Company and received $175 for the principal and interest due, although in fact plaintiffs had not deposited any money with the Meckel Company. It developed that the plaintiffs did not have the money, and Meckel, president of the Meckel Company, worked out an arrangement with them whereby they paid Meckel $35 per month for six months, and their tenant in certain property paid his rent of $35 per month to Meckel. When the sum of $175 had been received Meckel delivered Notes 1 and 2 to plaintiffs. Defendant Lony had no knowledge of this arrangement, and when Notes No. 3 and 4 matured he took them to the Meckel Company and was paid $172 for the principal and interest due. Having been paid in advance for the notes, Meckel delivered them to plaintiffs. The same was true when Notes No. 5 and 6 matured. Shortly before Notes No. 7 and 8 were to mature Meckel died and the Meckel Company went into bankruptcy. Up to that time plaintiffs, through their own payments and the rent money, had paid the Meckel Company a total of $840. Notes

No. 1 to 6 inclusive, totalling $516, had matured and had been paid and delivered to plaintiffs. Thus plaintiffs had paid the Meckel Company $324 in excess of the total of the notes which had matured, and contended that the Meckel Company had been the agent of defendant for all collections made by it and that they were entitled to a credit of that sum on their notes. Defendant Lony began foreclosure proceedings and plaintiffs sued.

In that case we pointed out that defendant Lony knew that plaintiffs were making payments to Lony for the currently due principal and interest notes, and that on three occasions Lony had accepted the proceeds from Meckel and had delivered to him the maturing principal and interest notes. As to such payments we said (loc. cit. page 899 of 283 S.W.2d), " * * * Under these circumstances, and on the authority of Kraemer v. Leber, supra, we have concluded that Meckel had implied but nonetheless actual authority to collect these notes for Lony when due." However, as to the payments in advance made by plaintiffs we held (loc. cit. page 899 of 283 S.W.2d) :

"It does not follow, however, that Meckel had implied authority to collect notes nos. 7 and 8 in advance and prior to the time they fell due. An agent's authority to make collections for his principal will not be extended by implication so as to justify the collection by him of money before it is due, particularly a considerable time before the obligation matures, in the absence of some known course of dealing of such a character that reliance may be placed thereon by the obligor as indicating that the agent is actually authorized to collect in advance, or of some other circumstances giving the appearance of actual authority or a holding out of ostensible authority. O'Connell v. Reuter, 237 Mo.App. [883] 887, 178 S.W.2d 464; Bennett v. Royal Union Mut. Life Ins. Co., 232 Mo.App. 1027, 112 S.W.2d 134; Bost v. McFarland, 229 Mo.App. 776, 81 S.W.2d 350; Brants v. Runnels, Mo. App., 26 S.W.2d 1004; Paxston v. Gilliam-Jackson Loan & Trust Co., 221 Mo.App. 1101, 297 S.W. 119; McDonald v. Smith, 201 Mo.App. 78, 206 S.W. 591; City Nat. Bank v. Goodloe-McClelland Commission Co., 93 Mo. App. 123; 2 Am.Jur., Agency, § 171, pp. 136, 137; 2 C.J.S., Agency, § 107b (1), pp. 1281, 1282; Annotation 100 A.L.R. 389."

■ In their brief plaintiffs conceae the rule announced in Kraemer v. Leber and the numerous cases therein cited that when the maker pays money on a note to one who does not have the note in his possession he pays at his peril and at the risk of being required to show that the party to whom he paid was authorized to collect the payment as the agent of the owner. They likewise concede that having failed to ascertain whether the Sander Company still owned the notes or held Principal Note J for collection at the time they made the disputed prepayments thereon, the law cast the burden upon them to show that the Sander Company was authorized by defendants to collect such prepayments. Kraemer v. Leber, supra; McDonald v. Smith, 201 Mo. App. 78, 206 S.W. 591. Plaintiffs do not claim that there was any evidence introduced which indicated that there was direct authority given by defendants to Sander or his company to collect prepayments of principal. In fact, Mrs. Balthasar testified that she had expressly forbidden Sander to do so, and her testimony remains uncontradicted. As we gather from plaintiffs' brief, what they contend is: (1) that Sander's authority to collect prepayments of principal may be implied from what they describe as the "pertinent facts"; (2) that defendants are estopped from denying that Sander had such authority; and (3) that Sander was held out as defendants' "general agent," empowered to collect such prepayments of principal, and that the limitation placed by defendants on his authority to make collections cannot affect plain-

tiffs' rights, since they had no knowledge of such restrictions.

In support of their first contention, plaintiffs quote a passage from Wallo v. Rosenberg, Mo.App., 331 S.W.2d 8 to the effect that the relationship of agency may be implied from the words and conduct of the parties. Of course, as we have pointed out, that is the rule followed by this court in the Kraemer and Hamilton cases in holding that the evidence was sufficient to support the finding that Pickles and Meckel were authorized to collect interest (in the Kraemer case) and principal and interest (in the Hamilton case) which had matured and was subsequently accepted from them by the respective defendants. As to the so-called pertinent facts enumerated by plaintiffs which they assert establish an agency to collect prepayments, let us examine each in turn and compare it with the corresponding factual situation in the Kraemer and Hamilton cases. As stated by plaintiffs, they are:

(1) All of the principal and interest notes, and the deed of trust, directed that all payments were to be made at the office of the Sander Company. In the Kraemer case they directed that all payments were to be made at the office of Pickles, and in the Hamilton case at the office of Meckel.

(2) The deed of trust gave plaintiffs the privilege of making prepayments of principal. So did the deed of trust in the Kraemer case.

(3) Defendants were obligated by the deed of trust to accept such prepayments of principal. The defendant in the Kraemer case was similarly obligated.

(4) Plaintiffs, prior to the purchase by defendants, had made all payments, including prepayments of principal, at the office of the Sander Company. In the Kraemer case the plaintiffs, prior to defendants' purchase, had likewise made all payments, including prepayments of principal, at the office of Pickles. In the Hamilton case plaintiffs had made all payments of principal and interest at the office of Meckel.

(5) The principal note when purchased by defendants was endorsed with the two prepayments of principal which the plaintiffs had theretofore made. When defendant in the Kraemer case purchased the principal note it bore an endorsement of one prepayment, although the plaintiffs had in fact made two.

(6) Defendants knew from the endorsements on Principal Note J that prior to their purchase of the same plaintiffs had made prepayments of principal on each of two interest maturity dates, and failed to notify plaintiffs that they had purchased the notes. Defendant in the Kraemer case also knew from the endorsement on the principal note that prior to her purchase plaintiffs had made a prepayment of principal on one of three interest maturity dates, and likewise did not notify the plaintiffs that she had become the owner and holder of the notes.

It has also been suggested that an additional fact to be considered is that defendants, after they purchased the notes, without making their ownership known to plaintiffs, twice accepted payments made by plaintiffs to the Sander Company. But the payments which defendants accepted were of interest and principal currently due. In the Kraemer case there were no principal notes maturing each six months, but the defendant, after her purchase of the notes, and without making her ownership known to plaintiffs, on three occasions accepted payments of currently due interest which plaintiffs there had paid to Pickles. However, in the Hamilton case, as here, there were principal notes, as well as interest notes, which fell due at six-month intervals, and the defendant in that case, after purchasing the notes, and without making

his ownership known to plaintiffs, on three occasions accepted payment of such principal and interest notes which plaintiffs there had paid to Meckel.

■ Plaintiffs do not attempt to draw any distinction between these so-called pertinent facts and the essential facts in the Kraemer and Hamilton cases. We are unable to discern any substantial difference. Had there been no testimony as to actual authority given Sander to collect the principal and interest notes as they matured we would have no hesitancy in holding, as we did in those cases, that such authority could be implied. But in the light of those cases, which we consider to rule the instant case, we cannot agree that the evidence was sufficient to establish the implied authority of Sander or his company to collect prepayments on account of principal.

■ As stated, plaintiffs' second string to their bow is that the defendants are estopped from asserting that Sander or his company lacked authority to collect the disputed prepayments of principal. To bolster their point they quote from Wind v. Bank of Maplewood & Trust Co., Mo.App., 58 S.W.2d 332, 336, to the effect that:

"The general rule is that the principal is bound by the acts of his agent when he has placed the agent in such position that persons of ordinary prudence, reasonably conversant with business usages and customs, are thereby led to believe and assume that the agent is possessed of certain authority, and to deal with him in reliance on such assumption. Koewing v. Greene County Building & Loan Association, 327 Mo. 680, 38 S.W.(2d) 40; Johnson v. Hurley, 115 Mo. 513, 22 S.W. 492; Noyes-Norman Shoe Co. v. Cooper, (Mo.App.) 4 S.W.(2d) 486; Underwood Typewriter Co. v. Century Realty Co., 165 Mo.App. 131, 146 S.W. 448."

This rule of "apparent authority" is founded on the equitable doctrine of estoppel. Koewing v. Greene County Building &

Loan Association, 327 Mo. 680, 38 S.W.2d 40; Johnson v. Hurley, 115 Mo. 513, 22 S.W. 492. In a case analogous to this, Hefferman v. Boteler, 87 Mo.App. 316, 321, Ellison, J. wrote:

"The principle upon which an agency is established by conduct is estoppel. That is to say, the principal's conduct must be such as to mislead the debtor. His conduct must be such as to make it appear to the debtor that a certain party is acting as his agent; and though not true in point of fact, yet justice requires that he should not be allowed to dispute it in a contest with the party whom he has, by his conduct, misled. It must follow that in order to avail himself of this the debtor should have known of the principal's conduct. Otherwise, he could not have been misled or deceived by appearances. *It has therefore been held in cases in all substantial respects like this, that when the payor does not know of the holder's ownership of the note there can be no estoppel against the holder to deny the agency of a third party, for the reason that in such case the payor could not be misled by the holder.* Joy v. Vance, 104 Mich. 97 [62 N.W. 140]; Biggerstaff v. Marston, 161 Mass. 101 [36 N.E. 785]. And so it is stated in one of the principal cases cited for plaintiff (to which we shall presently again refer) that the authority of such an agent will be conclusively presumed 'so far as may be necessary to protect the rights of third persons who have relied thereon in good faith, and in the exercise of reasonable prudence.' [First National] Bank [of Carthage] v. [Mutual Benefit Life] Ins. Co., 145 Mo. 127, 138, 46 S.W. 615. Now, in this case there is not a particle of evidence that plaintiff knew of any transactions between the defendant and the Sextons or the company. Indeed, plaintiff admits that he did not know defendant and never saw him until after the payment in controversy and after

the company closed its doors. He therefore could not have been even influenced, much less misled, by defendant's transactions with the company. He knew that some one owned the note, but he knew the party would not entrust it to the company and that the latter only got possession of the coupons by paying the sum due on them. This consideration disposes of the theory of agency by defendant's conduct and course of dealing." (Emphasis ours.)

For the same reasons, defendants here are not estopped to deny that Sander or his company were their agent for the collection of prepayments of principal. When plaintiffs made the disputed prepayments they did not do so in reliance on the apparent authority of Sander as defendants' agent. How could they, when they did not know that Sander had sold their notes to defendants? See Hamilton v. Hecht, supra; Montbriand v. Scruggs, 226 Mo. App. 436, 46 S.W.2d 211. The fact of the matter is that they made the prepayments on the erroneous assumption that their notes and deed of trust were still owned by Sander or his wife. As plaintiff Hochrein testified: "To my knowledge I thought he had it—to be exact that he had it in the family." We find no basis for the establishment of an agency by estoppel.

◼ Lastly, as stated, plaintiffs invoke the doctrine stated in Farm & Home Savings & Loan Association of Missouri v. Stubbs, 231 Mo.App. 87, 98 S.W.2d 320, 334, that where the principal puts an agent forward as his general agent or places him in a position where, others are justified in believing that his powers are general, the restrictions that may be imposed privately on the agent are immaterial, except as between the principal and the agent, and cannot affect the rights or remedies of third parties dealing with the agent who have no knowledge of such restrictions or limitations. We have no doubt as to the efficacy of the rule, but it is devoid of any application here. As in the case of estoppel, the party affected must have known that he was dealing with an agent, and as we have already pointed out, plaintiffs here had no such knowledge nor did they make the disputed prepayments relying on such a belief. Furthermore, neither Sander or his company were defendants' general agent, nor was either held out as such. Sander's only authority was to collect the principal and interest notes as they fell due, and defendants did not even deliver such notes to him until they had first received the amount due thereon. As stated in McDonald v. Smith, 201 Mo.App. 78, 84, 206 S.W. 591, 593, where one Bonfoey and the Bonfoey Loan & Investment Company were the counterparts of Sander and his company:

"The facts here, however, justify the conclusion that defendant only sent the coupon interest notes to Bonfoey after receiving payment of same, and this did not make him or his company her general collection agent."

It is apparent that both plaintiffs and defendants acted in good faith and are both innocent parties, and it is a matter of deep regret that either of them must suffer for the wrongs of a third party. But under the rule stated in Kraemer v. Leber, supra, and the numerous other authorities cited, we are constrained to hold that the loss resulted from the negligence of plaintiffs and that the burden thereof must therefore be borne by them.

For the reasons stated, it is the recommendation of the Commissioner that the judgment be reversed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed.

ANDERSON, P. J., WOLFE, J., and JAMES D. CLEMENS, Special Judge, concur.