R. H. McDONALD, ET AL., Defendants in Error, v. ADNA SMITH, Plaintiff in Error.

Springfield Court of Appeals, November 25, 1918.

1. **BILLS AND NOTES:** Payments by Maker: Notice of Ownership: Constructive Notice. The maker of a negotiable promissory note must take notice that the note is likely to pass into the hands of a third party.

2. ———: Authority to Collect: Duty of Maker. The maker of a negotiable note in making payments thereon must ascertain that the person to whom payment is made is the owner or has possession thereof for collection and if not, the burden is on him to show the agents authority to collect.

3. **PRINCIPAL AND AGENT:** Collection of Notes: Extent of Authority. Where the purchaser of a note sent interest coupons to the payee for collection, the payee had no authority to collect coupon notes not sent in for collection, nor to collect any part of the principal note not yet due and never in agent's hands.

4. ——: ——: ——. If the holder of a note merely sent the interest coupon notes to a third person after he had collected and paid her the amount thereof, he was not her general collection agent.

5. ——: Place of Collection: Presumption of Authority. No inference of agency on the part of the proprietor of an office to collect a note arises from the fact that the note is payable at that office.

6. ——: Payments to Agent: Care Required. One paying note not yet due must ascertain that owner has deposited note with agent for collection, since authority of agent to receive payment does not confer authority to collect before maturity.

Error to Howell County Circuit Court.—*Hon. E. P. Dorris*, Judge.

REVERSED AND REMANDED (*with directions*).

*M. E. Morrow* for plaintiff in error.

No brief for defendant in error.

STURGIS, P. J.—In this suit plaintiff, as owner of certain land in Howell County, tenders and pays into court $300 which he claims is the balance due on a note which defendant claims to own, secured by a deed of trust on such land, and asks the court to enter judgment declaring said note fully paid and the deed of trust satisfied and discharged. After judgment by default was entered and set aside, an answer was filed by defendant, in which she asserts her ownership of the secured note, claims that there is a balance of $800 and some interest due on said note and asks a judgment for that amount and a decree foreclosing the lien of the deed of trust and ordering the land sold to pay said debt. The real question at issue is whether the plaintiff is entitled to have credited on the note $500 which he paid to an alleged agent of defendant, but which defendant in fact never received. The judgment in the lower court is for plaintiff and defendant brings the case here by writ of error.

The plaintiffs having won the case in the trial court, have seemingly lost all interest in the same and

have filed no brief, statement or argument in this court. We regret this as this court is entitled to the benefit of the authorities cited and relied on and the arguments advanced by the prevailing party in the trial court. As it is ·we are compelled to gather the facts from the record and statement of the appellant and to find and declare the law as best we can.

The facts as we gather them are, that one James F. Gilmore, being the owner of this land on February 1, 1911, borrowed $800 thereon through B. H. Bonfoey, a loan broker at Unionville, Mo., giving the note in question for $800, payable to A. M. Bonfoey five years after date, and executing a deed of trust to B. H. Bonfoey as trustee to secure the same. This $800 note is a coupon note and had attached thereto ten coupon or interest notes for $24 each representing the semi-annual interest payments.

Bonfoey sold this loan, as was his custom, in a short time and the defendant, Miss Adna Smith, who then and now· lives at Burlington, Iowa, became the purchaser and owner thereof in February, 1911. One Brooks, a banker of the same town, advised and assisted Miss Smith in purchasing this loan, the collection of interest, etc. Gilmore, the mortgagor and maker of the note, was somewhat acquainted with Bonfoey's loan business and methods, being himself a local agent in securing loans for Bonfoey, and says he knew that Bonfoey did not continue as owner of this loan, but did not know to whom it was sold and transferred. The note and coupons were by their terms payable at the office of B. H. Bonfoey, Unionville, Mo. Gilmore sold this land a year or so later to Milton Reed, who in turn sold it to plaintiff, McDonald, in December, 1913, nearly three years after the loan was made and two years before it became due. Plaintiff in purchasing· the land assumed and agreed to pay the note and interest thereon. Gilmore says he made the interest payments while he owned the land through the office of Bonfoey at Unionville, Mo. About the time plaintiff purchased the land Bonfoey quit the loan business at Unionville,

Mo., and went to Oklahoma City, Okla., and there organized and was president of the Bonfoey Loan & Investment Company. Plaintiff says he learned from Gilmore, the former owner of the land, that he could pay interest on this loan through Bonfoey at Oklahoma City. Plaintiff evidently wrote there about the same, for the first correspondence put in evidence is a letter of January 13, 1914, from the Bonfoey Loan & Investment Co. to plaintiff acknowledging receipt of "your favor of January 9th" and saying the interest on the Gilmore loan due February 1st and a balance on the "commission note" should be sent so as to reach that office before February 1st, and "if you wish to pay $200 or more on the principal you can do so and add it to the draft when you remit." Plaintiff thereupon sent to the Bonfoey Loan & Investment Company the February, 1914, interest and the balance due on the commission note and $500 additional to be applied on the principal. This $800 note was then owned by and in possession of defendant, was not due for two years and there is nothing in the note or mortgage giving the right to pay any part of the principal before maturity.

The Bonfoey Company sent the interest then due to defendant, got the coupon note and sent same to plaintiff together with the "commission note" then fully paid but retained or embezzled the $500, and a year or so later failed and went into the hands of a receiver. Defendant never received this $500 and same was never credited on the note owned by her. The plaintiff's contention is that his payment to the Bonfoey Company at Oklahoma City was a payment to defendant's authorized agent and therefore a payment to defendant. Neither plaintiff nor defendant knew till near the maturity of the note that Bonfoey had embezzled this money, the defendant not knowing that any such payment had been made and plaintiff believing that a proper credit had been made upon the note wherever it was. The Bonfoey Company concealed the matter by continuing for a time to receive from plaintiff the

201 M. A.—6

interest payments, reduced from $24 to $9 to correspond with the reduction of the principal from $800 to $300, but remitting to defendant the full amount of $24 at each interest payment and getting from her and sending to plaintiff the cancelled coupon. The Bonfoey Company did not, however, remit to defendant the amount of the last two coupons of $24 each and she has these unpaid coupons attached to the principal note, though plaintiff says he paid these amounts also to the Bonfoey Company.

The court tried this case to a jury and error is assigned to the giving and refusing of instructions, the admission and exclusion of evidence, etc. We shall give no heed to these matters, as the case is clearly one in equity both on plaintiff's petition and defendant's answer. The case therefore stands for trial in this court on the competent evidence. As said in Plummer v. Knight, 156 Mo. App. 333:

"It must be remembered in considering the objections to this evidence that this is an action in equity and not one at law, and that the rule governing appellate practice as applied to equity cases is different from that applied to law cases. On appeal in an equity case, all the evidence is before the appellate court and the issues of fact as well as those of law are before such court for review, and, notwithstanding irrelevant and incompetent testimony may have been admitted by the trial court, the appellate court will sift the relevant from the irrelevant and the competent from the incompetent and render the proper judgment. [Lacks v. Butler County Bank, 204 Mo. 455, 102 S. W. 1007.]"

The one question for determination here is whether the $500, paid by plaintiff to the Bonfoey Loan & Investment Co. in February, 1914, two years before the note in question was due but long after the defendant had become the owner of such note, was a payment to an agent authorized to collect same for defendant. The maker of a negotiable promissory note must take notice that such note is likely to pass into the hands of a third party. [Kellogg v. Morgan, 45 Mo. App. 245, 246.]

It is clear that such alleged agent did not then have and never had this note in its possession for collection or otherwise. The law has often been stated that when a debtor owes a negotiable note and pays money thereon to another as agent, it is his duty at his peril to ascertain that the person thus paid is in possession of such note; and if not in such possession, the debtor must then show that the person he pays has express or implied authority to collect the note not in his possession. [Cummings v. Hurd, 49 Mo. App. 139, 146; Plummer v. Knight, 156 Mo. App. 331, 336, 137 S. W. 1019; The City Nat'l Bank v. Goodloe-McClelland Commission Company, 93 Mo. App. 123, 137.]

This case is quite like Maguire v. Donovan, 108 Mo. App. 511, 516, where the court said:

"In making payments to Donovan, without requiring him to produce the principal note, and without having such payments indorsed thereon, as was done when the first partial payment was made, appellant, Mary Maguire, in contemplation of law, is presumed to have acted at her own peril and assumed the risk incident to such method of dealing and, as Donovan had no authority whatever from the owner of the paper, such payments did not operate to liquidate the note in her hands. If the maker of negotiable paper transferred in usual course of business makes payment to any person other than the true owner, he must be prepared to prove that the person receiving payment was the actual or ostensible agent of the real holder of the paper. [White v. Kehlor, 85 Mo. App. 557; Sharp v. Knox, 48 Mo. App. 311.] Nor did the fact that *Donovan was trustee* named in the power of sale incorporated in the mortgage confer any right to receive payment of the note in absence of authority to be inferred from its possession; his powers as such trustee were clearly defined by the instrument and embraced no such authority. [Fortune v. Stockton, 168 Ill. 454.] Payment of a note to extinguish it should be made either to the holder and owner, or to some one authorized by him to receive it, and upon payment demand

for the note should be made, otherwise such payment is made at risk of the party paying it, and if the party receiving payment had no right or authority, the payment is no discharge as against the true holder. [Eaton & Gilbert, Commercial Paper, p. 534b; Edwards, Bills & Notes, p. 537.]

There can be no claim that the defendant after she acquired this note gave any express authority to Bonfoey or his company to collect the interest coupons, much less the principal note itself. Even if it be shown that she sent interest coupons to Bonfoey for collection and when the plaintiff or the previous owners of the land paid the money to Bonfoey, he sent same to defendant and delivered the paid coupon notes to the proper party, that did not give Bonfoey authority to collect coupon notes not sent him for collection and certainly not to collect the principal note not yet due and never in his hands for collection or for any purpose. [Cummings v. Hurd, 49 Mo. App. 139, 145.]

The facts here, however, justify the conclusion that defendant only sent the coupon interest notes to Bonfoey after receiving payment of same and this did not make him or his company her general collection agent. [White v. Kehlor, 85 Mo. App. 557, 562.]

The notes in question were payable at the office of B. H. Bonfoey at Unionville, Missouri, and even if the place of payment could be transferred to a different town and state by a removal by Bonfoey of his place of business and a change in the character of the business from that of his personal business to that of a company or corporation of which he was president, yet the law is that no inference of agency on the part of the proprietor of an office to collect a note arises from the face that such note is payable at such office. The maker of such note when paying at such office must nevertheless ascertain that the owner of the note has deposited same with such proprietor for collection or otherwise held him out as such agent. [White v. Kehlor, 85 Mo. App. 557, 562; Cummings v. Hurd, 49 Mo. App. 139, 145.]

This is especially applicable to one paying a note not yet due for authority of an agent to receive payment of a note does not confer authority to collect before maturity. [City Nat'l Bank v. Goodloe-McClelland Com. Co., 93 Mo. App. 123, 137.]

We are informed by appellant that respondent cited and relied in the trial court on such cases as Sharp v. Knox, 48 Mo. App. 169, and Bank v. Mut. Ben. Life Ins. Co., 145 Mo. 127. In those cases, however, it was shown that the owner of the note had in many similar instances permitted the alleged agent to collect both principal and interest on other loans held by such owner and by his conduct and course of dealing had held out such person as his general agent to collect and receive money owing to him whether such agent had such notes for collection or not. So far as the evidence here shows, this is the only note or loan which plaintiff ever owned and she had no dealings with Bonfoey or his company except in connection with this one loan. There could, therefore, be no "similar instances" or "course of dealing" between them. The similar instances and course of dealing mentioned by plaintiff was between Bonfoey and other holders of loans made by him and with those defendant had nothing to do and is not bound thereby.

It is always difficult to decide which of two innocent parties must suffer a loss caused by the wrong doing of a third party and such is this case. The only course is to apply the well recognized rules of law governing such cases. This we have attempted to do and the result is that the judgment must be reversed and the cause remanded with directions to enter judgment for defendant as prayed in her answer.

*Bradley* and *Farrington, JJ.,* concur.