SAMUEL C. PAINTER, ET AL., RESPONDENT, v. MRS. JAY L. OLDHAM, APPELLANT.*—19 S. W. (2d) 772.

Kansas City Court of Appeals. April 1, 1929.

*Jay L. Oldham* for appellant.

*M. J. Kilroy* for respondent.

ARNOLD, J.—This is a suit in equity which seeks to compel defendant to give plaintiffs a credit of $250 paid to the J. R. Allen Mortgage Company to be applied as part payment on plaintiff's promissory note and deed of trust, or mortgage real estate bond, for $700.

The verified petition alleges that on September 29, 1922, plaintiffs executed their deed of trust to Daniel C. Ketchum, trustee for J. R. Allen Mortgage Company, being a lien on lot 32, Haverhill, an addition to Kansas City, Missouri, to secure the payment of their principle promissory bond No. 4050, of the same date, payable to the order of the J. R. Allen Mortgage Co., in the principal sum of $700, due three years after date with interest at seven per cent, payable semi-annually, evidenced by six interest coupons of even date therewith for $24.50, falling due on the 29th of March and September of each year, both principal and interest payable at the office of the Mortgage Company in Kansas City, Missouri.

Upon the filing of the petition, the court issued the following restraining order:

"It is therefore ordered that you and each of you be restrained from transferring, alienating or disposing of a certain promissory note given to the J. R. Allen Mortgage Company by the plaintiffs, and secured by a deed of trust on all of Lot Thirty-two (32), in Haverhill, an addition in and to Kansas City, Missouri, and by said Mortgage Company transferred to the defendant, Mrs. J. L. Oldham, and

"That you be and appear in Division 5, of the Circuit Court of Jackson county, Missouri, at Kansas City, on April 3, 1928, at nine o'clock A. M. to show cause why a temporary injunction should not be issued against you.

"A true copy. Attest:   "LYNN G. BUFORD,
  "Clerk of the Circuit Court of
  Jackson County, Missouri.
"(Seal)   "By E. G. BUSH, Deputy."

The answer admits the execution of the deed of trust and note as pleaded and generally denies as to the other allegations; and, fur-

ther, pleads that the Mortgage Company for value received, sold, indorsed in blank without recourse and delivered to defendant said $700 note; that defendant consented that maturity be extended to September 29, 1928, with interest at seven per cent payable semi-annually and that interest was paid to September 29, 1925.

The cause was tried to the court without the aid of a jury and resulted in an order and decree that defendant should credit $250 on the principal of the $700 note, together with a credit of $14 on each of the two due interest coupons; and that defendant be restrained and enjoined from selling, alienating, transferring or assigning said principal note or either interest coupon of said notes, without first placing the credits upon said notes and interest coupons as herein directed. It was further ordered that plaintiffs have and recover their costs in this behalf expended, and that execution issue therefor.

Motions for new trial and in arrest of judgment were overruled and defendant has appealed.

As is required of us in equity cases, we have read the whole record. We find no dispute over the material facts in the case, the dispute arising over the application of the law to the facts. As alleged in the petition and shown by the testimony, plaintiffs purchased from the J. R. Allen Mortgage Company, Lot 32 in Haverhill, an addition to Kansas City, Missouri, and as part payment therefor, executed a bond and deed of trust for the sum of $700 at seven per cent interest, payable semi-annually and due in three years. The deed of trust specified the interest and principal were payable at the office of the Mortgage Company. The interest was so paid, and at the end of the three-year period, or about that time, through said mortgage company the time of maturity of the note was extended an additional period of three years, such extension being made by indorsement on the bond.

It further appears there was a second deed of trust against the property, also given as part payment, which plaintiffs had paid in installments of $25 and which payments were completed on or about September 29, 1925. The testimony shows that at that time plaintiffs negotiated through the mortgage company to make payments of $25 per month on the principal of the first mortgage. This was refused but later it was agreed between plaintiffs and the mortgage company, at plaintiff's request, that they might pay on the principal debt $100 or more at any interest-paying period. Pursuant to this agreement, plaintiffs paid $174.50 on September 28, 1925, of which $150 was to be applied on the principal and $24.50 in full of interest then due. Subsequently this sum was paid to defendant by the mortgage company and no protest was made by her to plaintiffs, and the amount was credit as stated. The payment of the

$150 on the principal reduced the interest installments from $24.50 to $19.25 semi-annually.

On March 25, 1927, plaintiffs paid to the mortgage company $19.25 interest and received the cancelled coupon therefor for $24.50. Thereafter and on September 29, 1927, plaintiffs paid the mortgage company an additional $250 to apply on the principal debt. This money was being held in the customary manner by the mortgage company awaiting the call of their client when a receiver was appointed for the mortgage company which had failed, and the amount never reached the hands of defendant.

Thereafter, and on the 7th day of March, 1928, defendant through her counsel wrote plaintiffs asking for the payment of an interest coupon in full. On March 28, 1928, plaintiffs called upon defendant's counsel and tendered the sum of $310.50 in full payment of the bond, being $300 principal and $10.50 accrued interest. This was the total amount of the indebtedness less the $250 payment here in controversy. Counsel for defendant refused the tender solely on the ground that it was insufficient.

It appears that at the time of the commencement of the action the amount previously tendered was deposited with the clerk of the court to the use of defendant, where it now reposes. Daniel C. Ketchum, assignee of the defunct mortgage company, testifying from the loan register, stated that the Painter note which was first sold to one Clara Rothrum, October 11, 1922, later found its way back to the mortgage company and thereafter was sold to defendant. The records show that check No. 38090, taken from the files of the mortgage company, payable to Mrs. J. L. Oldham, dated March 28, 1927, was paid and canceled; that one item of the same is for $150 which corresponds with the item of $150 paid in six months previously; $19.25 interest that had been paid three days previously, and $5.25 interest which was charged to the profit account of the mortgage company; that is to say, paid by the company. It is also shown by the mortgage company records that plaintiffs paid a commission of $25 on October 12, 1925, to the mortgage company for the extension of the loan No. 4050, being the loan here in controversy.

A. A. Warner who was in the employ of the mortgage company testified that he believed he told Mrs. Painter, one of plaintiffs that she could make a payment on the principal; and that they allowed her to make the $150 and $250 payments, respectively, and that they must have had some authority to do so; that he did not know whether the authority to receive payments was verbal or in writing, as Mr. J. R. Allen got that; that witness did not have anything to do with the authority to collect payments; never consulted de-

fendant about accepting partial payments, as defendant conducted practically all her business with Mr. Allen.

F. F. Clark, bookkeeper for the mortgage company testified that the receipt dated September 28, 1926, for the $174.50 payment, being $150 on the principal and $24.50 interest was in his handwriting; that the amount was remitted to defendant on March 28, 1927, when the semi-annual interest was paid to her. This witness also testified that the extension indorsement on the bond was in his handwriting but he could not say whether or not the note was in the office of the mortgage company at that time; that the note evidently was not in the office at the time the $150 was paid; that he did not want to send out a receipt for $24.50 when he was receiving only $19.25.

J. R. Allen, testifying for defendant, stated that he was an officer of the J. R. Allen Mortgage Company; that he did not remember any conversation with plaintiffs in regard to payments on the principal debt; that he did not think he ever got defendant's consent to collect these partial payments; that he had no recollection of talking to them about the matter, or of the matter of payment of the entire note before its maturity; that the $250 payment just remained in the funds of the mortgage company and was not paid to defendant; he did not remember talking to Mr. Warner about allowing plaintiffs to make the partial payments on the principal.

Defendant, testifying for herself, stated she met plaintiffs for the first time in the courtroom at the trial of the case; that from the time she first bought the note and deed of trust in question they were never in the possession of the mortgage company; that the $150 payment received on September 28, 1927, was credited on the note at the time of the trial; that she never gave the mortgage company permission to collect any payments and never held out that the mortgage company was her agent and had never told Mr. Warner, or anyone connected with the mortgage company that they could collect partial payments on the Painter note.

It is in evidence that defendant had purchased another note from the mortgage company, by the terms of which the interest and principal were payable at the mortgage company, and that when this note was paid off, the money remained in the possession of the mortgage company until re-invested. It is insisted the court erred in holding this established a course of dealing making the mortgage company defendant's agent, because such facts were unknown to defendant prior to the trial herein. It is also charged as error that the court found that defendant had accepted the $150 from the mortgage company in March, 1927, which amount was collected from plaintiff before due, and that she had ratified the act of the mortgage company, thus making that company her agent, although plain-

tiffs previously had been informed by the mortgage company it had sold said note and was not in possession of the same, and that in September, 1927, at the time plaintiffs made the payment of $250, there was no privilege given in said note to make payments before maturity, and at the time of payment plaintiffs did not ask whether the $150 had been credited on said note, nor demand of said mortgage company information as to whether they were the owners or were in possession of said note.

It is also charged the decree is for the wrong party in that under the law and the evidence, the decree should recite that when plaintiffs made payment of said $250 to the mortgage company, it was not the owner nor in possession of said note, and that plaintiffs were informed by it that the said note had been sold to a customer, and that when plaintiffs made payment, they paid at their peril in not demanding that payment be indorsed on the note in their presence.

These assignments of error are so closely allied that they may be considered and determined as one. As we view the record, there is one question decisive of this appeal, to-wit, Was the mortgage company the agent of defendant in the transaction recorded, or were the dealings such as to lead plaintiffs to believe the mortgage company was defendant's agent, and thus authorized to receive the payments? The $250 payment is the only one in issue here.

It is urged that where the payor does not know the holder's ownership there can be no estoppel against the holder to deny the agency of a broker. As an unmodified statement of the law, this is correct and defendant's citations apply. But the modifying circumstance herein appears in the facts that the dealings between plaintiffs and defendant were conducted through the mortgage company in the collection of interest coupons, and the remittance thereof to defendant by the mortgage company. Moreover, the payment of the $150 on the principal debt was made in the same manner, and was accepted by defendant and by her credited on the bond. It is clear to us that had defendant chosen not to accept the partial payment of the bond, it was her duty to have repudiated the act of the mortgage company in accepting such payment, and to have notified plaintiffs. But by accepting the $150 payment and taking no steps to repudiate the contract between plaintiffs and the mortgage company, defendant ratified the contract with plaintiffs to that extent; and without notice to the contrary the $250 payment was made under the same agreement. Estoppel, therefore, enters the case in plaintiffs' behalf. [Bank v. Ins. Co., 145 Mo. 127, 46 S. W. 615; Shinn v. Mule Co., 109 Mo. App. 557, 83 S. W. 1015.] Defendant leans heavily on the rule of law that in order to show ratification of an unauthorized act of an agent, knowledge of such act on the part of the principal must be shown. Defendant's citations support the

rule, but we find it has no application here for the reason defendant remained silent after receiving knowledge of the $150 transaction, and thereby led plaintiffs to pursue the same course of dealing in paying the $250. Her ratification of the unauthorized act will be presumed.

Further it is argued that one paying a note not yet due must ascertain that the owner has deposited the note with the agent for collection, since authority of the agent to receive payment does not confer authority to collect before maturity. The citations of defendant in support of this rule are apt, but the rule has no application where, as here, ratification of the act of the agent is clear. It is properly insisted that no inference of agency on the part of the proprietor of an office to collect a note arises from the fact the note is payable at that office. This position is not refuted and requires no discussion, in view of the ratification of defendant of the acts of the mortgage company above referred to.

Under the facts presented we hold the chancellor was right in his findings that by the action of the defendant the plaintiffs were led to believe that the mortgage company was the agent of defendant, authorized to receive payments, and that any reasonably prudent person under the same circumstances would have been led to the same conclusion. And that—

"Mrs. Oldham knew that the Allen Mortgage Company had collected at least $150 on the principal of the note, and of course accepted it and credited it upon the note, and must have known that the plaintiffs would reasonably conclude that any subsequent payments would be received in the same manner; and the conclusion of course is, that where one of two innocent parties must suffer, it must be the one who contributed to bring about the unfortunate result, and in this case, I think the line of conduct of Mrs. Oldham in her business transactions would naturally mislead plaintiffs in this case into the belief that they were doing the right and proper thing in paying this $150 over to the Mortgage Company as the agent for the holder of the note." [First National Bank v. Ins. Co., 145 Mo. 127, 46 S. W. 615; Shinn v. Mule Co., 109 Mo. App. 557, 83 S. W. 1015; Withers v. Belt Ry. Co., 226 Mo. 373, 126 S. W. 432, 440.]

The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.