GARRETT J. O'CONNELL AND CATHERINE D. O'CONNELL, HIS WIFE, APPELLANTS, v. ADOLPH REUTER, WALTER W. KLEIN AND ERNA KRENNING, RESPONDENTS.—178 S. W. (2d) 464.

St. Louis Court of Appeals.   Opinion filed March 7, 1944.

*Joseph M. Walsh* and *J. E. Patton* for appellants.

884

*Abeken & Bergmann* for respondents, Adolph Reuter and Walter Klein.

ANDERSON, J.—This is a suit to enjoin a foreclosure sale under a deed of trust, and to cancel the deed on the theory that the note which the deed secured had been paid. The plaintiffs, husband and wife, were the owners of the property; the defendant Adolph Reuter was the assignee and owner of the deed in question; the defendant Walter W. Klein was the successor trustee of the deed of trust; and the defendant Erna Krenning was the owner of a deed of trust executed subsequent to the one involved herein. Erna Krenning filed a cross-bill in the case, in which she asked that the court declare her deed of trust to be a valid first lien against the property of plaintiffs, and that the injunction theretofore issued enjoining the sale under the Reuter deed of trust be made permanent. The trial court denied

plaintiffs the relief asked, holding that defendant Reuter's notes and deed of trust were valid, and that the deed of trust was a first lien against plaintiffs' said real estate; it ordered defendant Erna Krenning to take nothing by her cross-bill, decreeing that her said deed of trust was a second deed of trust and subject to the one held by defendant Reuter; it dissolved the temporary restraining order theretofore issued; and it denied the plaintiffs' request for a permanent injunction. From this decree, the plaintiffs have appealed.

The deed of trust owned by defendant Reuter was dated February 15, 1939, and covered premises known as 8437 Glen Echo Drive in St. Louis County. It secured a principal note in the sum of $6,000, due in 36 months, together with six semi-annual interest notes bearing six per cent interest, each in the sum of $180, and payable on the 15th day of February and August of each year, at the office of the Knickmeyer-Fleer Realty & Investment Company. The said deed of trust gave prepayment privilege on interest due dates only. The deed was duly recorded on February 21, 1939.

At the time of the execution of the said deed of trust, the property which it covered was owned by the Knickmeyer-Fleer Realty & Investment Co., a corporation organized under the laws of Missouri. Title to the property was held by F. W. Busse, as "straw party" for said corporation, and said Busse executed the deed of trust as party of the first part. Arnold J. Fleer, Vice President of the Knickmeyer-Fleer Realty & Investment Co., was the original trustee in the deed of trust; and Mary Ann Maddock, straw party for the said real estate company, was the original beneficiary in the deed of trust.

On May 25, 1939, defendant Adolph Reuter purchased said notes and deed of trust, and at all times since has been the owner and holder of the same.

Plaintiffs became interested in the property in March, 1940, at which time they visited the premises and met Mr. Busse, a salesman for the Knickmeyer-Fleer Realty & Investment Co. Mr. Busse arranged for a meeting between plaintiffs and Mr. Schreimann, sales manager for the Knickmeyer-Fleer Realty & Investment Co. After some negotiations, an agreement was reached and an earnest money contract executed on March 19, 1940, whereby plaintiffs agreed to purchase the premises for a total purchase price of $7,500, and Knickmeyer-Fleer Realty & Investment Co. agreed to convey the property by general warranty deed free and clear from liens and encumbrances except those noted in the contract. Reuter's deed of trust was not listed in the said contract. At first plaintiffs contemplated securing $4,000 of the purchase price in the form of a loan from the F. H. A., but later they abandoned that idea and instead paid $3,500 cash and executed a $4,000 note and deed of trust under date of May 15, 1940, for the balance. This note provided for four per cent interest, represented by interest notes. All of said notes bore eight per cent in-

terest from maturity. Arnold J. Fleer, Vice President of the realty company, was named trustee, and F. W. Busse, straw party and employee of the Knickmeyer-Fleer Realty & Investment Co., was designated as party of the third part, in the said deed of trust.

Before the deal was closed, Mr. Schreimann, the sales manager, informed plaintiffs of the existence of the $6,000 deed of trust, but assured plaintiffs that the $6,000 deed of trust would be released at the time their deed was put on record. Plaintiffs were given a letter, over the signature of Mr. Chas. E. Dittrich, secretary of the Knickmeyer-Fleer Realty & Investment Co., dated May 15, 1940, which contained the following statements:

''The certificate of title shows a deed of trust dated February 15, 1939 recorded in Book 1574, page 277, $6,000.00, County Taxes for 1939 and Village of Bel-Nor taxes, 1939, delinquent.

"We will see that the above described deed of trust is released at the Recorder's Office, and the delinquent taxes paid at the time the papers are filed, conveying said property to you.''

F. W. Busse, as straw man for Knickmeyer-Fleer Realty & Investment Co., on said date executed a general warranty deed conveying the premises to plaintiffs as joint tenants, which deed was duly recorded on May 16, 1940. This warranty deed made no mention of the Reuter deed of trust. The $4,000 deed of trust likewise was recorded on May 16, 1940, and thereafter was sold by the Knickmeyer-Fleer Realty & Investment Co. to Erna Krenning.

The $6,000 deed of trust held by Reuter was never released of record. Plaintiffs made no investigation to ascertain if the said deed of trust had been released, Mrs. O'Connell stating that they trusted the Knickmeyer-Fleer Realty & Investment Co. She also stated that as far as she and her husband knew, the Knickmeyer-Fleer Realty & Investment Co. might have been the holder of the deed of trust in question.

Late in January, or early in February, 1942, the defendant Walter W. Klein called plaintiff Garrett O'Connell on the telephone, and told him that he represented the holder of the $6,000 deed of trust, which was to mature on February 15, 1942, and advising Garrett O'Connell that the holder was desirous of learning what arrangements Mr. O'Connell intended to make as to its payment. This telephone call was made after articles had appeared in local newspapers telling of the failure of the Knickmeyer-Fleer Realty & Investment Co., the institution of receivership proceedings, and the disappearance of Arnold J. Fleer, the operating head of the company.

Mr. O'Connell, in response to Mr. Klein's inquiry, stated that there was no $6,000 deed of trust against the property, but that there was a $4,000 deed of trust which he and Mrs. O'Connell has executed at the time of purchase. Mr. Klein then suggested that Mr. O'Connell come to his office for a discussion of the matter. Thereafter Mr. O'Connell, accompanied by his attorney, went to Klein's

office, and at this meeting Klein was asked to name the holder of the $6,000 deed of trust, but he refused to give out this information. Thereafter defendant Klein, as successor trustee under said $6,000 deed of trust, advertised the property in question for sale on April 27, 1942. Thereupon plaintiffs brought this suit.

Mrs. Steines, a daughter of defendant Reuter, testified that her father had been dealing with the Knickmeyer-Fleer Company for the past seventeen years; that during that time he purchased several deeds of trust from them; that at no time did her father authorize the Knickmeyer-Fleer Company to make any investments or purchase any investments for him, but that if Mr. Fleer had a deed of trust on hand that he recommended, she and her father would investigate the property before purchasing. She further stated that all collections of principal and interest on deeds of trust purchased by her father from the Knickmeyer-Fleer Company were made by said company, and paid to her father.

The books and records of the Knickmeyer-Fleer Realty & Investment Co. were brought into court by Edw. M. Thornhill, receiver for the company. These records corroborate Mrs. Steines' testimony, and further show numerous collections of rent, interest notes, and expenditures for repairs and insurance. The collections and expenditures apparently were on property on which Reuter had loaned money and which he had taken over, for Mrs. Steines testified that her father held title to one piece of property on Racquet Drive which he had bought in under a deed of trust he had held, and that the Knickmeyer-Fleer Company made all necessary repairs, placed insurance, and collected the rentals on the said property. Apparently collections on notes were made without Knickmeyer-Fleer Realty & Investment Co. having possession of them, for Mrs. Steines testified: "We never left any notes for collection, not even interest notes."

Charles E. Dittrich, secretary and office manager of the Knickmeyer-Fleer Realty & Investment Co., testified: "Collections of both principal and interest on the notes secured by said deeds of trust were made by the company for Mr. Reuter, and in some instances payments were made to Mr. Reuter by company check, and, in two instances, May, 1928, and September, 1938, these records show that proceeds of deeds of trust collected by the company for Mr. Reuter were applied by the company on new deeds of trust purchased by Reuter from the company."

The evidence further shows that on April 8, 1940, Mr. Dittrich, secretary of the Knickmeyer-Fleer Realty & Investment Co., wrote defendant Reuter a letter, reading as follows:

"Dear Mr. Reuter:

"The property at 8437 Glen Echo Drive on which you hold the loan of $6,000.00 dated February 15, 1939, has been sold and the purchaser of said property wishes to refinance it with an F. H. A. Loan on the 20-year plan at monthly payments.

"It will be necessary that we have the certificate of title and insurance policies and then of course, the balance of the loan papers will be needed when the purchaser is ready to close the transaction.

"Will appreciate your cooperation in letting us have the certificate of title and insurance papers at your earliest convenience.

"Respectfully yours,

"Knickmeyer-Fleer Rlty. & Inv. Co.

"(Signed)    C. E. Dittrich,

"Secretary"

Mr. Reuter received this letter on April 9, 1940, and on that day, or the day after, either Mr. Reuter or his daughter, Mrs. Steines, delivered the insurance papers and certificate of title on the Glen Echo property to the Knickmeyer-Fleer Realty & Investment Co. Mrs, Steines testified that she did not at that time deliver the $6,000 note and deed of trust to the Knickmeyer-Fleer Company, but that said note and deed of trust remained in Reuter's safe deposit box at the Lindell Trust Company until after the Knickmeyer-Fleer Company closed its doors, at which time her father turned the said note and deed of trust over to their attorney, Walter W. Klein, with instructions to foreclose the deed of trust.

The accounts payable ledger of the Knickmeyer-Fleer Realty & Investment Co. contains the following entry under date of May 31, 1940:

"Turned in D/T dated 2/15/30 on property, 8437 Glen Echo, J 1842."

Entered under the credit column is the figure "6,000.00".

Mr. Dittrich, secretary and office manager of the company, testified:

"Mr. Reuter did not turn in the $6,000 deed of trust to the company to my knowledge and I have never seen deed in the company's offices from the time the deed of trust and notes were sold to Reuter until I saw them here in court. So far as I know, Reuter was still holding his $6,000 deed of trust when Miss Krenning purchased the $4,000.00 deed of trust on Glen Echo from Mr. Fleer. The certificates of title to the Glen Echo property was held in the Knickmeyer-Fleer Company's office from the time they received it from Mr. Reuter and it was never returned to Reuter or given to the O'Connells or Miss Krenning. To my knowledge, Reuter at no time authorized or directed Fleer or anyone to sell the said $6,000.00 deed of trust."

The evidence establishes beyond doubt that Reuter did not at any time surrender possession of his deed of trust.

Mrs. Steines testified:

"The $6,000.00 deed of trust was never paid to my father by the Knickmeyer-Fleer Company and on several occasions over a period of three or four months after we delivered the certificate of title and insurance policy to the company, my father and I went to the office and demanded that the matter be straightened up or that the certificate of title and insurance policy be returned to us. By 'straightened up'

we meant that Knickmeyer-Fleer Company should return the certificate of title and insurance policy or pay off the deed of trust. On different times when we inquired about this matter we were told that the deal was not yet closed and the papers were not ready. After that period of three or four months we made no further inquiry about the matter until the company closed its doors in February, 1942. . . . We always collected principal and interest from Knickmeyer-Fleer, never from the owners. When my father and I went to the offices of the company and inquired about getting the 'matter straightened up' we were told the deal was not closed and the papers were not ready. All we could do was to look to the Knickmeyer-Fleer Company. For a period of about three months after turning over of the certificate of title and insurance policy by my father, we frequently went to the company's office insisting that the matter be 'straightened up.' ''

The trial court found:

That the payment of said Three Thousand Five Hundred Dollars and the execution and deliverance of said notes and deed of trust for Four Thousand Dollars on the part of the plaintiffs constituted a payment for the property and not a payment of the notes secured by the deed of trust held by defendant Reuter, and that while the said Knickmeyer-Fleer Realty & Investment Company collected principal and interest notes held by the defendant Reuter over a period of years and made various investments for said defendant and acted as agent for said defendant in said matters, "that, nevertheless, the Knickmeyer-Fleer Realty & Investment Company was not acting as agent for the defendant Reuter at the time of all the transactions had by the plaintiffs with the said Realty & Investment Company."

Appellants challenge the trial court's decree, on the theory that Reuter's note, secured by said deed of trust, was paid by plaintiff's delivery of $3,500 cash and the $4,000 deed of trust to the Knickmeyer-Fleer Realty & Investment Co., Reuter's duly authorized agent.

Plaintiffs did not know of the existence of Reuter until April 3, 1942, so there is no question of apparent agency or estoppel to deny the alleged authority of the agent to receive said payments. Therefore, the simple question here presented is, Did the Knickmeyer-Fleer Realty & Investment Co. act as Reuter's agent at the time; and if so, did it have authority, either actual or implied, to collect the $6,000 note?

The evidence shows that the Knickmeyer-Fleer Realty & Investment Co. was the owner of the Glen Echo property at the time of plaintiffs' purchase. It did not profess to act for Reuter at the time, nor did plaintiffs deal with it as agent for Reuter. In the sale of the property, the Knickmeyer-Fleer Realty & Investment Co. was acting for itself. It sold the property to plaintiffs for $7,500, and by the terms of the sales contract agreed to convey the property

free and clear of the mortgage in question. At the time the deal was closed, it received from plaintiffs a $4,000 deed of trust and $3,500 in cash, and assured plaintiffs that the Reuter deed of trust would be released. In thus receiving the deed of trust and cash, and in making the payments, was the company acting as agent of Reuter, or was it acting in its own behalf? Plaintiffs say that because of the previous course of dealing, the company must be deemed to have had authority to receive payment of the note, and in view of the whole evidence must be deemed to have acted at the time of the transaction in question as agent for Reuter.

We cannot agree with this contention. In our opinion, the Knickmeyer-Fleer Realty & Investment Co. was acting for itself with regard to the whole transaction, and had it assumed to act for Reuter, it was without authority, express or implied, to do so. The record contains no evidence whatever to indicate that the company assumed to represent respondent Reuter. On the contrary, the evidence with reference to the making of the contract of sale, and with reference to the consummation thereof, indicates that said company intended to act, and did act in fact, for itself and for no one else. Therefore, it follows necessarily that the company's acts were not the acts of Reuter, even if we were to assume that the company had the implied authority which plaintiffs claim it had. Every act of an agent cannot be said to be related to his agency. An agent may act independent of his agency, and he will not be said to be dealing with the subject matter of the agency unless he so intended or unless the other party relied upon his agency. Even had the company intended to act for Reuter on the occasion in question, plaintiffs still would not be entitled to recover because the evidence failed to show that the company had implied authority to receive payment for said deed of trust.

It is true, a course of dealing existed between Reuter and the Knickmeyer-Fleer Realty & Investment Co. over a period of years, from which it could reasonably have been found that said company had implied authority to receive payments when due of principal and interest notes belonging to Reuter. But, authority to collect money when due does not in itself imply authority to collect money before it is due. To hold otherwise would be to give the agent power to alter the terms of the contract, and that the agent should not be allowed to do under constructive authority. Such authority should carry with it power to collect only at the time nominated in the instrument. Collection before due carries with it loss of interest on an investment. Furthermore, a principal is in a better position to check the doings of his agent if his authority is confined to collecting when due, for the principal knows when that time arrives. Mr. Mechem states the rule, in which we concur, as follows:

"And even though an agent have authority to receive payment of an obligation, this would not ordinarily authorize him to receive it

before it is due, and thus, for example, cut off future interest, or surrender a valuable security; or even expose the principal to the risk of a payment at a time when he had not bargained for it. A power to receive payment must, therefore, usually be construed as authority to receive payment at maturity and not before. A known usage of trade or course of business in a particular employment, or a habit of dealing between the parties, may, however, extend the ordinary reach of the authority. Thus an agent to loan money may be given such general authority over the subject as to authorize him to re-invest, change the form or amount of securities, and receive payment upon securities before they are due." [Mechem on Agency (Second Edition), Vol. 1, sec. 958, page 690.] [See City National Bank v. Goodloe-McClelland Commission Co., 93 Mo. App. 123, and Paxston v. Gillam-Jackson Loan & Trust Co., 221 Mo. App. 1101, 297 S. W. 119. See also Note, 100 A. L. R. 389.]

It is our conclusion that defendant Reuter cannot be held to be bound on the theory of agency by any act of the Knickmeyer-Fleer Realty & Investment Company on the occasion in question.

Nor can Reuter be bound on the theory of ratification as suggested by appellants, since the Knickmeyer-Fleer Realty & Investment Co. did not assume to act for him in the transaction in question. There was nothing to ratify.

No do we find that Reuter gave the Knickmeyer-Fleer Realty & Investment Co. actual authority to receive payment of his deed of trust after receiving the letter of April 8, 1940, from Mr. Dittrich. In fact, his retention of the note at the time he delivered the certificate of title and the insurance papers to the Knickmeyer-Fleer Realty & Investment Co., and his demand for their return, convince us that he did not expressly authorize said company to collect the note from plaintiffs or consent to its pre-payment.

Plaintiffs also conplain of certain findings of fact made by the trial judge. Since we have reviewed the case *de novo,* as we are required to do in equity appeals, and since we have found that under the pleadings and evidence plaintiffs are not entitled to the relief sought, it becomes unnecessary for us to review the court's findings.

The judgment appealed from is affirmed. *Hughes, P. J.,* and *McCullen, J.,* concur.