**Leslie HAMILTON and Mary Hamilton, (Plaintiffs) Respondents,**

**v.**

**August G. HECHT and Gilbert Lony, (Defendants) Appellants.**

No. 29200.

St. Louis Court of Appeals. Missouri.

Nov. 15, 1955.

George M. Andrews, Preston Quick, St. Louis, for appellants.

Robert H. Batts, Ronald L. Cupples, St. Louis, Rassieur, Long & Yawitz, St. Louis, of counsel, for respondents.

. HOUSER, Commissioner.

This is an action in equity. Leslie and Mary Hamilton, husband and wife, makers

of a series of principal and interest notes, sued to enjoin the attempted foreclosure of the deed of trust securing them and to enjoin the transfer of two of said notes which plaintiffs claimed in their petition they had paid to a collecting agent of the owner of the notes, and also prayed for the return of the notes. The defendants are August G. Hecht, the successor-trustee named in the deed of trust, and Gilbert Lony, the owner and holder of the notes. Defendants filed a joint answer denying the allegations of the petition. The chancellor enjoined the foreclosure and the negotiation of the two notes, which were ordered delivered to plaintiffs. He also adjudged plaintiffs entitled to certain credits for overpayments; declared the then amount due on the debt after computing interest and offsetting credits; granted plaintiffs a thirty-day moratorium within which to pay the amount then due, and declared that if plaintiffs failed to pay that amount within thirty days defendants would be free to sell the remaining unpaid notes or foreclose. From this decree defendants have duly perfected their appeal to this court.

William Meckel, President of the Meckel Realty Investment Company, a St. Louis concern, had a large clientele to whom he sold promissory notes secured by deeds of trust on real estate. Persons in need of money would borrow from him, executing notes and deeds of trust payable to some straw party in Meckel's employ. The straw party would immediately endorse the notes in blank, without recourse, and within a short period of time, a week or two, the papers would be sold by Meckel to some client of his who dealt in such investments. Most of them were three-year notes providing for semi-annual interest and principal payments. The notes were made payable at the office of Meckel's company in St. Louis. Upon presentation of the notes on maturity dates Meckel, in most instances, would pay the notes out of his own company funds, even though the borrowers were a few days, or a week or two, late in making their payments. Then he would make collection from the borrower "and catch up that way."

Gilbert Lony was one of Meckel's clients. At the time this suit was filed Lony had purchased from Meckel the papers in six different loans, including plaintiffs'. The various loans purchased by Lony originally totaled $19,675. The first of these loans was made in April, 1948; the last in July, 1952.

The loan to plaintiffs was made on May 5, 1951. The sum borrowed was $2,500. The principal was payable in five $100 notes due at six month intervals after date, and one $2,000 note due May 5, 1954, all payable at the office of Meckel Realty Investment Company in St. Louis. The interest was payable in six notes. The following schedule illustrates the transaction:

| Due | Interest | Note No. | Principal | Note No. |
|---|---|---|---|---|
| 11–5–1951 | $75.00 | 1 | $100.00 | 2 |
| 5–5–1952 | 72.00 | 3 | 100.00 | 4 |
| 11–5–1952 | 69.00 | 5 | 100.00 | 6 |
| 5–5–1953 | 66.00 | 7 | 100.00 | 8 |
| 11–5–1953 | 63.00 | 9 | 100.00 | 10 |
| 5–5–1954 | 60.00 | 11 | 2,000.00 | 12 |

The notes were payable to Leo J. Moe, an employee of Meckel. Moe, a straw party only, who concededly had no interest in the notes, immediately endorsed the notes in blank, without recourse, and they remained in Meckel's possession for nine days. On May 14, 1951 he sold them to Gilbert Lony, through Lony's attorney, one George M. Andrews. Mr. Andrews had general authority to purchase loans for Lony, and to transact all of Lony's business relating to loans. The deed of trust and all the notes were turned over to Mr. Andrews who in turn placed them in the hands and posses-

sion of Lony. Lony held them continuously in his possession until the date of maturity. When a note matured Lony would deliver it to Mr. Andrews with instructions to present it at the proper place for payment. Mr. Andrews would then present the note or notes to Meckel for payment on or about the maturity date. On November 5, 1951 Mr. Andrews appeared at Meckel's office and presented notes nos. 1 and 2, which were due on that date. Up to that time Meckel had not received any payment of principal or interest in any amount from plaintiffs. Nevertheless, when Mr. Andrews presented notes nos. 1 and 2, Meckel issued a check for $175 payable to the order of Lony, drawn upon his realty company bank account, and mailed it to Lony. Mr. Andrews relinquished notes nos. 1 and 2 to Meckel, who thereupon wrote a letter to plaintiffs stating that their first payment was overdue and should be paid. Plaintiffs went to Meckel's office, explained their inability to pay the total sum of $175 at one time, and suggested that notes nos. 1 and 2 be paid in six monthly installments of $35, out of plaintiff Leslie Hamilton's salary. This was agreed to by Meckel. The payment of notes nos. 3 and 4, which would thereafter mature on May 5, 1952, was also discussed. Plaintiffs stated that they could rent a house which they owned and proposed that the monthly income therefrom, $35, be devoted to the retirement of notes nos. 3 and 4. It was suggested that the tenant remit those payments directly to Meckel, and this was agreed to by the latter. The house was rented and commencing in November, 1951 and continuing until April, 1953, without exception, the tenant made monthly payments of $35 direct to Meckel. The tenant's first payment was by cash, delivered by her in person. The remaining payments were made in the form of money orders sent by mail by plaintiffs' tenant direct to Meckel. Following the conference between plaintiffs and Meckel in November, 1951 plaintiffs went to Meckel's office personally and made six $35 monthly payments out of plaintiff Leslie Hamilton's salary. On each of these six trips Meckel, in the presence of plaintiffs, would endorse the payments on the back of notes nos. 1 and 2. Five of the payments were endorsed on the reverse side of note no. 1 and one payment was endorsed on note no. 2. When the last of this series of $35 payments was made by plaintiffs notes nos. 1 and 2 were returned by Meckel to plaintiffs by mail.

Thus plaintiffs paid notes nos. 1 and 2 to Meckel within six months after Meckel had paid Lony therefor. When the due dates on notes nos. 3, 4, 5 and 6 arrived they had been paid in advance by the making of the several $35 monthly rental payments. There was no evidence that Lony or his attorney knew of, consented to or acquiesced in the installment payment practice or payment before maturity. Receipt of monthly payments on semi-annual loans was not an established practice of Meckel's. In two or three instances the making of payments in this fashion had been allowed by Meckel, but it was not made clear to what borrowers the privilege had been extended, or what loans were thus handled. A week or so after each six month period following November, 1951 Meckel would send plaintiffs by mail the principal and interest notes which had been paid. In this manner notes nos. 1 to 6, both inclusive, were paid and returned to plaintiffs.

William Meckel died on April 12, 1953. Up to the time of his death plaintiffs had paid Meckel $210 personally and $630 through their tenant, or a total of $840. Up to that time notes nos. 1 to 6, both inclusive, totaling $516, had matured and had been paid and delivered to plaintiffs. Notes nos. 7 and 8, in the aggregate amount of $166, would come due during the next month, on May 5, 1953. On April 12, 1953 plaintiffs had a credit of $324 with Meckel. On April 28, 1953 Meckel Realty Investment Company filed a petition in bankruptcy and a trustee was appointed. On April 27, 1953 Mr. Andrews, as attorney for Lony, by letter informed plaintiffs that his client held the deed of trust on their property and requested that payment of the notes be made "directly" to him when due. The notes thereafter were placed with Voss Realty Company for collection. On June 8, 1953 Mr. Andrews wrote plaintiffs requesting

immediate payment of the notes to Voss Realty Company, on pain of foreclosure. No payment having been made by plaintiffs, foreclosure was instituted on June 30, 1953, and this suit was filed on July 25, 1953.

Neither Lony nor his attorney ever gave Meckel direct authority to collect the notes in question. Lony did not know Meckel, nor did he know plaintiffs. At no time did he communicate directly with either. All Lony's dealings with Meckel were carried on through Mr. Andrews. The latter did not know or communicate with plaintiffs except by letter after Meckel's death. Prior to Meckel's death plaintiffs did not know that Meckel had sold the notes, but thought that Meckel owned them. Prior to Meckel's death Lony did not notify plaintiffs, directly or indirectly, that he was holder of the notes or direct plaintiffs to make payments to him.

At the trial Lony's counsel said: "I think we can admit the Meckel Realty Company did collect * * *." When plaintiffs' counsel sought to identify the handwriting "Hamilton notes" on the checks issued by Meckel Realty Investment Company to Lony May 5 and November 13, 1952, Lony's counsel said: "I still can't see, admitted the agency, admitted that they collected some money for us, I can't see the materiality of it." Lony lived at House Springs, 24 miles from the city limits of St. Louis. He conceded that it was inconvenient for him to come to town to make collections on the notes and that it was convenient and perfectly agreeable with him for the payments to be made to Meckel and for Meckel to forward the payments to him. Lony further testified that Meckel was making collections for his benefit and turning the payments over to him, and that he knew the Hamiltons were making payments to Meckel "so he would pay me."

Two questions are presented on this appeal: (1) was Meckel the agent of Lony, so that payments by plaintiffs to Meckel were payments to Lony?; and (2) if so, did Meckel have authority to accept payments in installments and in advance of the maturity of the notes?

■ It is conceded that there was no direct authority given Meckel, and there could be no agency by estoppel because plaintiffs admittedly did not know of Lony's ownership of the notes, and therefore could not have been misled by Lony. Hefferman v. Boteler, 87 Mo.App. 316.

■ The first question is whether there was an implied agency arising out of a course of dealing between the parties. It may be taken as settled that the burden of proving the existence of an implied agency was upon plaintiffs, since they failed to ascertain that Meckel owned the notes or had them in his possession for collection purposes. Kraemer v. Leber, Mo.App., 267 S. W.2d 333.

■ We hold that the record discloses an implied authority to Meckel to receive and collect payments of principal and interest notes belonging to Lony, arising out of a course of dealing between plaintiffs and Meckel of which Lony had knowledge and in which he acquiesced. An extensive course of dealing between plaintiffs and Meckel, of which Lony had knowledge and approved, was shown. For more than five years prior to the filing of this suit Meckel. to Lony's knowledge and with his consent, had been receiving and remitting to Lony payments of sums due him on six separate loans negotiated by Meckel, loans which originally totaled the substantial sum of $19,675. For a period of more than 23 months Lony acquiesced in the payment by plaintiffs to Meckel of sums due Lony for both principal and interest, monies which he always accepted. Through the years Lony made no effort, personally or by attorney, to collect principal or interest on these notes. During Meckel's lifetime he relied entirely upon Meckel to make all contacts with plaintiffs requesting payments, to make all collections and to return all paid notes. At no time did Lony notify plaintiffs that he had purchased the notes. Nor did Lony notify plaintiffs to pay the notes at any other place than that designated in the notes, until after Meckel's death. Indeed Lony did not communicate with plaintiffs in any manner until there was a failure on

the part of Meckel or his company to remit. The existence of Lony was wholly unknown to plaintiffs until after Meckel's death. Until that time plaintiffs considered that Meckel still owned the notes, and plaintiffs dealt with him as such owner. They saw notes nos. 1 and 2 in Meckel's possession on the occasion of the six trips they made to Meckel's office from November, 1951 to April, 1952, when they saw Meckel endorse payments on these notes. Thereafter as the due dates on notes nos. 3, 4, 5 and 6 arrived, plaintiffs promptly received the notes by mail from Meckel. In this manner six notes were paid by plaintiffs and returned to them, over a period of one year. Not only the six Hamilton notes, but also payments on notes in five other loans were collected and remitted by Meckel to Lony or his attorney, all of which was apparently satisfactory to and regularly accepted by Lony. As long as remittance of the collections was regularly made Lony had no objection to the payments made to Meckel. Lony stood silently by, accepting the benefits of the collection arrangement, and it is not to be doubted that had the course of dealings continued uninterrupted by Meckel's death and the failure of his company, no objection to the arrangement would ever have been voiced by Lony. By his course of conduct Lony may be said to have agreed to the receipt by Meckel of the payments on the notes without their production at Meckel's office, because it clearly appears that Lony's attorney, Mr. Andrews, would not surrender the possession of the notes until he had first received a check in payment therefor or a check was deposited in the mail addressed to Lony. Furthermore, it was admitted that Lony knew that plaintiffs were making payments to Meckel for Lony's benefit; that Meckel was collecting these sums for payment to Lony, and that Meckel was turning such payments over to him. Under these circumstances, and on the authority of Kraemer v. Leber, supra, we have concluded that Meckel had implied but nonetheless actual authority to collect these notes for Lony when due.

■ Appellants refer to the undoubted rule that when the maker pays money on a note to one who does not have the note in his possession he pays at his peril and at the risk of being required to show that the payee was authorized to collect the payment as the agent of the owner. When an implied agency arising out of a course of conduct is established, however, the case is taken out of the operation of the rule. Sharp v. Knox, 48 Mo.App. 169.

■ It does not follow, however, that Meckel had implied authority to collect notes nos. 7 and 8 in advance and prior to the time they fell due. An agent's authority to make collections for his principal will not be extended by implication so as to justify the collection by him of money before it is due, particularly a considerable time before the obligation matures, in the absence of some *known* course of dealing of such a character that reliance may be placed thereon by the obligor as indicating that the agent is actually authorized to collect in advance, or of some other circumstances giving the appearance of actual authority or a holding out of ostensible authority. O'Connell v. Reuter, 237 Mo. App. 887, 178 S.W.2d 464; Bennett v. Royal Union Mut. Life Ins. Co., 232 Mo.App. 1027, 112 S.W.2d 134; Bost v. McFarland, 229 Mo.App. 776, 81 S.W.2d 350; Brants v. Runnels, Mo.App., 26 S.W.2d 1004; Paxston v. Gilliam-Jackson Loan & Trust Co., 221 Mo.App. 1101, 297 S.W. 119; McDonald v. Smith, 201 Mo.App. 78, 206 S.W. 591; City Nat. Bank v. Goodloe-McClelland Commission Co., 93 Mo.App. 123; 2 Am.Jur., Agency, § 171, pp. 136, 137; 2 C.J.S., Agency, § 107 b (1), pp. 1281, 1282; Annotation 100 A.L.R. 389.

This question was discussed by Anderson, J., in O'Connell v. Reuter, supra, 178 S.W. 2d loc. cit. 469, as follows:

"It is true, a course of dealing existed between Reuter and the Knickmeyer-Fleer Realty & Investment Co. over a period of years, from which it could reasonably have been found that said company had implied authority to receive payments when due of principal and interest notes belonging to Reuter.

But, authority to collect money when due does not in itself imply authority to collect money before it is due. To hold otherwise would be to give the agent power to alter the terms of the contract, and that the agent should not be allowed to do under constructive authority. Such authority should carry with it power to collect only at the time nominated in the instrument."

The reasons given by Judge Anderson and by Mechem on Agency, 2d Ed., Vol. 1, § 958, p. 690, quoted in the O'Connell opinion, are that collection before the instrument is due carries with it loss of interest on an investment, exposes the principal to the risk of a payment at a time when he had not bargained for it, and deprives the principal of an opportunity, arising out of his knowledge of the date of maturity, to better check the doings of his agent.

In the instant case there is nothing in the record to support the implication of agency to receive payments in advance of the maturity of these notes. Lony's flat denial that he ever authorized anybody to collect any of these notes on a time payment basis stands uncontradicted. Mr. Andrews testified positively that there was no arrangement between him and Meckel or between him and Lony "or anybody else" for time payments on any of the notes. There is nothing to show that Lony knew of, consented to, acquiesced in, or ratified Meckel's practice of accepting $35 each month from plaintiffs' tenant. The clear inference from all of the evidence is that Lony did not know of or acquiesce in Meckel's acceptance of plaintiffs' payments in installments and in advance. The only course of dealing known to plaintiffs was that between plaintiffs, their tenant and Meckel by which the rentals were transmitted in advance, and that course of dealing was not known to Lony or his attorney. There was no course of dealing between Meckel and Lony known to plaintiffs or any holding out of ostensible authority, upon which plaintiffs could have relied, indicative of the agency of Meckel to collect in advance. We re-emphasize that plaintiffs did not know that their notes had been negotiated, did not know of Lony's existence and dealt with Meckel as a principal, thinking he was the owner of the notes. Although plaintiffs "kept ahead of the debt" so that as the maturity dates of May 5 and November 5, 1952 on notes nos. 3, 4, 5 and 6 arrived there was an accumulation of these monthly rentals in an amount more than sufficient to pay the maturing instruments, the practice exposed Lony to the risk of payments at times when he had not bargained for it and deprived Lony of the better opportunity to check on the doings of Meckel at or near the maturity dates of the notes. It involved the risk of the continued solvency of the agent, and constituted an alteration of the contract, which provided for prepayment privilege only on interest bearing dates in sums of not less than $100. In the absence of knowledge, acquiescence or consent on the part of Lony to the prepayment practice, the implied or constructive authority of Meckel to receive payment of notes nos. 7 and 8 at the time designated in those instruments did not carry with it the power to collect the amounts of these notes before they were due. The principal was not required to assume that additional risk. Any such advance payments by plaintiffs to Meckel, not transmitted to Lony because of Meckel's death and the failure of his company, are not to be considered as payments on the debt.

Nor does the record present a case of agency by ratification, as in Painter v. Oldham, 225 Mo.App. 174, 19 S.W.2d 772, where the agent collected in advance and remitted to the principal who accepted the partial payment and failed to repudiate the act of the agent. Lony positively testified that he did not ever receive any partial payments on the notes. Had Lony accepted the payments before maturity with full knowledge of Meckel's practice of permitting plaintiffs to pay in advance by installments Meckel would be held to have had implied authority to take partial payments in advance, but the facts were otherwise.

■ Nor is this a case of giving an agent to loan money power to deal with investment funds in a general way, with full authority to invest, reinvest, change the form and amount of the securities, grant extensions of time, etc., in which case the ordinary reach of authority would be extended to the receipt of payment upon securities before they are due. Mechem on Agency, 2d Ed., Vol. 1, § 958, p. 690. The authority of Meckel was limited to the collection of the notes and the remittance of the funds upon presentment.

■ Neither plaintiffs nor Lony was guilty of wrongdoing but unfortunately one of them must suffer a loss. The rule is that where one of two innocent parties must suffer, the loss must fall upon the one whose negligence brings it about. Kraemer v. Leber, supra, 267 S.W.2d loc. cit. 338, and cases cited. The notes in question were negotiable in character. Plaintiffs were bound to have known that they could and probably would be negotiated and passed into the hands of a third party. When a maker pays money on a note to one who does not have the note in his possession he pays at his peril and at the risk of being required to show that the payee owned the note or was authorized to collect the payment as the agent of the owner. Before making installment payments in advance plaintiffs should have ascertained that Meckel either owned the notes or had possession thereof for collection and was authorized to receive advance payments. It was not sufficient for them to rely on the fact that they had seen notes nos. 1 and 2 in Meckel's possession and that notes nos. 3 to 6 had been returned by him. Plaintiffs did not take the trouble to make their remittances to Meckel in person, but depended upon their tenant to forward her rentals direct to Meckel. So far as the record shows neither plaintiffs nor their tenant demanded or received receipts from Meckel for the $35 monthly payments made. Plaintiffs made no effort to see to it that endorsements of these payments were made on the notes involved. At the time of the making of all of the payments following that of December 5, 1951 plaintiffs were operating on the credit side of the ledger and knew or were charged with knowledge that the notes upon which payments were being made were not yet due. Some of the advance payments thereafter made brought the accumulated total to an amount sufficient to pay a note coming due five or six months later, but plaintiffs made no request for the return of such note, contenting themselves to wait for its maturity date. By failure to require endorsement of payments on the notes and by failure to demand the re-delivery of the notes when their credits accumulated sufficiently to discharge them, plaintiffs were negligent and should bear the loss of the failure of Meckel to remit faithfully to the owner of the notes. Kraemer v. Leber, supra, 267 S.W.2d loc. cit. 338, and cases cited.

Accordingly, it is the recommendation of the Commissioner that the finding, judgment and decree of the lower court be reversed and the cause remanded with directions to dissolve the injunction, and set aside the other orders of the court dated April 6, 1954.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The finding, judgment and decree of the circuit court is, accordingly, reversed and the cause remanded with directions to the trial court to proceed in accordance with the opinion of the court.

ANDERSON, P. J., MATTHES, J., and SAM C. BLAIR, Special Judge, concur.